**STATE of Missouri, Respondent,**

v.

**Jackie Ray ELMORE, Appellant.**

No. 55933.

Supreme Court of Missouri,
Division No. 1.

June 14, 1971.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

SEILER, Presiding Judge.

This is an appeal from a conviction of second degree murder with a 35-year sentence assessed by the court when the jury was not able to agree upon punishment.

The sole contention of error is that in violation of his rights against self-incrimination, evidence was received that defendant while in jail awaiting trial did not volunteer to the authorities his explanation of self-defense to the charge against him.

Defendant was interrogated by the state as follows:

"Q: (By Mr. Peak) Well, you know that you won't be convicted if you have the defense of self-defense, are you aware of that? A. Yes.

 * * * * * *

"Q: And you have been in the Jackson County Jail since September 2nd, 1969? A. Yes, I have.

"Q: At that time did you know that your testimony would be the same as it was here today? A. Yes. ·

"Q: And you also knew that self-defense was a complete defense to a crime? A. Yes.

"Q: But you stayed in the Jackson County Jail from September 2nd, 1969 until today? A. Right.

"Q: Or until the beginning of this trial? A. Right.

"Q: Did you tell anyone of these facts that you have just stated here to the Court today? A. Just my lawyer.

"Q: Only your lawyer? A. Yes.

"Q: And you made no statement to the authorities? A. No.

"Q: Concerning the facts that you have testified to here today? A. No.

"Q: But yet you knew that that testimony was self-defense, that that established the defense of self-defense? A. Yes.

"Q: But yet you stayed in jail since September 2nd, 1969 until today without telling the authorities, when in your own mind you had a perfect defense to the crime? A. Yes.

"Q. Is that right? A. Yes."

No objection was made by appointed counsel to the above line of questioning. The matter was not raised in defendant's motion for new trial. We are asked to give relief as a matter of plain error under Rule 27.20(c), V.A.M.R.

There were two directly opposed versions of the facts here. On September 1, 1969, a Labor Day holiday, there was a party at the home of Charles Clemons, starting about noon and running until about midnight. There was drinking, the amount uncertain. Around midnight, Robert Battle, the deceased, with two other young men and one young woman, left the party in Battle's automobile and drove to 3804 Flora Avenue, Kansas City, Missouri, where one of the men, Harris, got out to go to the house of a friend. The defendant and his companion, Ishmael McGill, came along in an automobile and stopped. An argument started as to whether Battle's car was parked too far out into the street. From here on the facts are in dispute.

The state's evidence was the defendant walked away from Battle's car toward his own car, got a pistol from the glove compartment, returned to Battle's car, told Battle that if he kept talking he would blow his brains out, and then stuck his hand inside the car and shot Battle in the left temple, killing him. Battle, so said the state's witnesses, did not have a gun at all, nor did anyone else in his automobile, and no one handed him a gun.

Defendant testified. His version was that Battle and he were arguing about Battle's car and the woman with Battle took a gun from her pocketbook, handed it to Battle, and told him to shoot defendant. Defendant went back to his own car, got a gun from the glove compartment, and stood on the curb. Battle started driving slowly forward and as he passed defendant Battle stuck his arm out the window and pointed a gun at defendant. Defendant thought Battle was going to shoot him, so he fired one shot at Battle to scare him. Defendant testified Battle and the people with him appeared to be intoxicated; according to the state's witnesses, no one was intoxicated.

Defendant testified that the gun which Battle was holding fell to the street, where it was picked up by defendant's companion, and the two of them were scared and drove away. They were arrested a few hours later and threw the guns out of the car as the officers were stopping them.

 It was error for the state to question defendant about whether, during the time he was in jail awaiting trial, he knew that self-defense was a defense to the charge and whether he had said anything to

the authorities that that was his version of what occurred. For many years it has been settled law in this state that a defendant's silence when charges are judicially made against him or he is under arrest cannot be shown against him, State v. Foley, 144 Mo. 600, 46 S.W. 733; reaffirmed recently by this court en banc, State v. Stuart (Mo. Sup.) 456 S.W.2d 19, 22. In the latter case, in fact, it was expressly held that an accused's failure to volunteer an exculpatory statement is not admissible as an admission. The reasoning on the proposition is set forth in Helton v. United States (C.C.A. 5) 221 F.2d 338, where testimony by the police was admitted to the effect that after his arrest defendant was given an opportunity to explain the presence of the marijuana found on his premises (he was convicted of illegal acquisition and production of marijuana) and that he did not do so. The court said this was error, saying as follows at 221 F.2d l. c. 341: " * * * In the circumstances of this case, we hold that this testimony constituted an attempt on the part of the Government to convict the appellant by his silence, by having the jury draw an inference of guilt from his refusal to explain, in violation of the spirit, if not the letter, of the Fifth Amendment. * * *

\* \* \* \* \* \*

"The constitutional protection against self-incrimination does not begin with a trial of a defendant on the charges against him. History tells us that it was the preliminary inquisition, prior to trial on the merits, which gave rise to the abuses, which resulted in the recognition of the privilege against self-incrimination. Under our law it is not the function of police officers to determine for the benefit of the jury whether or not a person under arrest on suspicion of crime has given a sufficient explanation, or any explanation at all, and the fact that the accused here remained silent rather than risk unwitting distortion of his statement by a police officer at a later date does not give in law, and should not be allowed to give in fact, rise to an inference of guilt. * * * "

■ The fact that defendant in the case before us did elect to testify and thereby became subject to cross-examination does not change the situation. Had he testified and said nothing about any claim of self-defense, his failure to advance any such explanation would, of course, be an indication that no such factual situation existed, but his being subject to cross-examination does not mean that his failure to speak up when he was under no obligation to do so months earlier in jail would thereby become a legitimate subject of cross-examination. An analogous situation was ruled the same way in State v. Conway, 348 Mo. 580, 154 S.W.2d 128, where it was held error for the prosecuting attorney to be permitted to show in cross-examining one of the defendants that she had not testified at the preliminary hearing. It is not consistent with defendant's right under the constitution and the statutes to remain silent if it is to be done on the penalty of his silence being used against him at trial, which would be the case if a prosecutor could cross-examine or comment on defendant's failure to volunteer information while he was awaiting trial. The Missouri statute, Sec. 546.270, RSMo 1969, V.A.M.S., specifically provides that if the accused shall not avail himself of his right to testify it shall not be construed to affect the innocence or guilt of the accused nor raise any presumption of guilt. The legislature thereby recognized that the privilege against self-incrimination is not only the right to remain silent, but equally important, the right not to have that very silence give rise to an inference of guilt.

The question remains whether this is a matter which should be treated as plain error under Rule 27.20(c) under the facts of this particular case. Since the only defense offered was one of self-defense and the interrogation sought the inference that the defense was a fabrication, it does not appear that the failure to object was a matter of trial strategy. Either this

**918**

killing was a gross one with no justification whatever, or else it was one in the belief that self-help was necessary for self-defense. This was what the jury had to pass on. We are not convinced from our study of the record that the cross-examination of the defendant about his not saying anything to the authorities about his defense while he was awaiting trial had a decisive effect on the jury or that a manifest injustice or miscarriage of justice has resulted therefrom. The contention is therefore overruled and the judgment is affirmed.

BARDGETT, J., and SEMPLE, Special Judge, concur.

HOLMAN, J., not sitting.