**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Gary PARRY, a/k/a Thomas Lacey,
Defendant-Appellant.**

**No. 47797.**

Missouri Court of Appeals,
Eastern District,
Division Nine.

Nov. 27, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 9, 1985.

Application to Transfer
Denied Feb. 26, 1985.

Henry J. Rieke, Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

R. KENNETH ELLIOTT, Special Judge.

Defendant appeals from a conviction of robbery in the first degree, § 558.011.1(1), RSMo.1978, and armed criminal action, § 571.015.1, RSMo.1978, for which the defendant was sentenced to a total of thirty years. We affirm.

On March 28, 1983, at about 10:50 p.m., Otha Douglas was in the Pleasure Seeker Lounge in the City of St. Louis. While he was drinking a beer and talking to the manager, two women came in and joined in the conversation. Douglas expressed his wish to secure a "joint of marijuana." One of the women responded that she knew where some marijuana was located and that she would go with Douglas to get some if he wanted.

Leaving the lounge with the women, Douglas saw one of the women talking with a man later identified as Napoleon Caruthers, whom Douglas had never seen before that night. Douglas, along with the two women, drove in Douglas' car to Burd Avenue, between Cote Brilliante and Wabada Streets in the City of St. Louis. The women got out of the car and Douglas gave one of them named "Jackie" $20.00. After waiting in his car for ten to fifteen minutes, Douglas got out of the car to look for the women, and as he was returning to his car Douglas saw two individuals approaching. After Douglas got back into his car, one of the men, who Douglas recognized as Caruthers, came around to the driver's side of Douglas' Pinto automobile and pointed a shotgun at him. Caruthers ordered Douglas to roll down his window and asked Douglas for money. After Douglas replied that he didn't have any, Caruthers struck him in the head while he was still sitting in the car. Douglas later testified that he saw the defendant (appellant) after being struck, and that he was pulled out of the car by Caruthers and defendant and led to a nearby fence. At the fence while Caruthers kept the gun on Douglas defendant went through Douglas' pockets. Caruthers and the defendant then drove off in Douglas' Pinto, whereupon Douglas returned to the Pleasure Seeker Lounge, where he tried to call his brother, rather than the police. Having some difficulty with the telephone, he left the lounge to use one across the street. While outside he flagged a passing police car and gave the officers descriptions of his assailants.

Officer Daniel Crain arrived and Douglas told him about the robbery, although he did not mention the marijuana. Officer Crain, who was in uniform and driving a marked police car, drove Douglas to the scene of the crime. At the corner of Wabada and Burd, Douglas saw Caruthers and the defendant walking south on Burd toward the police car. Both Caruthers and defendant were carrying tools and other items which Douglas recognized as his property.

After Douglas pointed out the two men, Officer Crain stopped and arrested them, and they were identified as Caruthers and the defendant. Conducting a pat-down search of Caruthers and the defendant at the scene, Officer Crain recovered some eight-track tapes from the defendant's pockets. A later search of the defendant

at the police station recovered $46.87 in cash.

Defendant testified in his own defense that he had been visiting a friend near the scene of the crime and was on his way to catch a bus home when he encountered Napoleon Caruthers, who was dragging some items including two tool boxes and some eight-track tapes, down Burd Avenue. Defendant testified that Caruthers asked him to help him carry these to a nearby house where Caruthers was staying, and defendant agreed to do so. Not far from where the defendant began to help Caruthers, they were both stopped by the police. Defendant maintained he had nothing to do with the robbery, that he thought the tapes belonged to Caruthers, that he never saw a shotgun, and further, that the $46.87 found on him belonged to him.

Defendant testified that his name was Thomas Lacey, and that he was also known as Gary Parry. When asked why he told the police his name was Gary Parry, the defendant explained he was afraid the police would arrest him because of his prior record. On cross-examination, he claimed he did not tell the police why he gave them a false name because the police never asked him about it. On rebuttal the state called Police Officer Harry Washington, who testified that after the defendant had been given his *Miranda* rights the defendant was asked why he had given a false name, and that the defendant stated his reason for giving a false name was that he had been harassed and arrested before by police.

Defendant first complains of error in allowing the prosecuting attorney to question defendant as to why defendant did not explain to police why he gave a false name alleging that such questioning violated defendant's right to keep silent, and was prejudicial.

Appellant complains about the following exchange:

Q. After they found out your correct name, they asked you why you told them the wrong name, right?

A. No, sir, they did not ask.

Q. You deny that?

A. They did not ask me why did I give them a false name.

Q. After they found out your correct name, did they come back and talk to you?

A. Right. They came and called me. They said, "Gary Parry, your name is Thomas Lacey. Gary Parry is not your real name." But they didn't question me why I gave them Gary Parry.

Q. They didn't question you why you gave them the wrong name?

A. No.

Q. And you didn't tell them why you gave them the wrong name?

A. No, they never asked me.

Q. They never asked you?

A. They never asked me.

Defendant cites *State v. Elmore,* 467 S.W.2d 915 (Mo.1971); *State v. Stuart,* 456 S.W.2d 19 (Mo. banc 1970); *State v. Vainikos,* 366 S.W.2d 423 (Mo. banc 1963); *State v. Ward,* 571 S.W.2d 773 (Mo.App.1978).

In *State v. Stuart,* supra, a juror posed a question to a police officer as to whether the defendant and another "claimed" the stolen money.[1] The defendant was never asked to claim the money. Consequently the defendant, by his silence, failed to deny or explain his possession of property by claiming it when he had the opportunity to do so.

In *State v. Vainikos,* supra, the defendant was asked if he told the police he carried a gun because he had been accosted by several men, and he said no. He was also asked whether the police officer asked him why he carried the gun, and the defendant denied this. A rebuttal witness, Officer Hemm, was called and testified that the defendant refused to make a state-

---

1. In *Stuart* a juror asked the court if he could present a question to the witness. The court permitted it. The case does not discuss the propriety of a juror questioning witnesses.

ment about the gun. The issue was whether the gun had been concealed by the defendant.

In *State v. Elmore,* supra, the defendant was asked on cross-examination whether he had made any statement to the authorities while he was in jail concerning the defense of self-defense. In *State v. Ward,* supra, a policeman appearing as a state's witness was asked whether the defendant said anything after he was informed of what the police had discovered and why he was arrested. The witness was allowed to testify, "He didn't say anything."

The common thread running through all of these cases is the defendant's failure to make an exculpatory statement. It is fundamental that the defendants in these cases were under no duty to speak, and the failure or refusal to do so could not be used as evidence against them.

The state cites *State v. Hughes,* 548 S.W.2d 270 (Mo.App.1977), which distinguishes the situations above noted from the one at bar. In *Hughes,* the defendant talked to the police and then attempted to present the substance of his interrogation in a light favorable to himself. The prosecutor attempted to impeach the defendant not by showing silence but by eliciting the true facts of the defendant's interrogation.

■ It is noteworthy that the defendant in the case at bar did not remain silent, but in fact offered police a false name. When confronted with his real name the defendant chose to explain the discrepancy and did not remain silent. At trial the defendant attempted to explain the discrepancy, and thus invited the prosecutor's questioning when he said the police did not ask him why he gave a false name. Following this, the prosecutor presented evidence showing that the defendant's testimony was not true. Here the prosecutor was attempting to impeach the defendant's credibility, and did not raise the issue of defendant's silence.[2] When the defendant took the witness stand he was subject to be contradict-

ed and impeached as any other witness. *State v. Coyne,* 452 S.W.2d 227, 229 (Mo. 1970); *State v. Hurst,* 612 S.W.2d 846, 853 (Mo.App.1981).

■ The prosecutor was justified in attempting to determine the situation that caused defendant to give police a false name. Defendant's first point on appeal is denied.

Defendant next complains that the trial court erred in allowing rebuttal testimony by Officer Washington on defendant's statement that he used an alias because of previous police harassment not to avoid arrest because of his prior record. The complaint rests on appellant not receiving such statements prior to trial in violation of Rule 25.03(A)(2), which requires the state to disgorge the substance of any oral statements made by the defendant.

The state argues that the state was under no duty to disclose the statements about which Officer Washington testified, because the statements were made in connection with another charge pending against defendant and therefore were not relevant to the case at bar. Secondly, the state notes that defendant's counsel was permitted to interview Officer Washington prior to his testimony at trial. Defendant claims surprise since he did not know Officer Washington was going to testify.

■ Rebuttal witnesses and the scope of their testimony lies within the broad discretion of the trial court. *State v. Crain,* 638 S.W.2d 761, 762 (Mo.App.1982); *State v. Cameron,* 604 S.W.2d 653, 658 (Mo.App.1980). The defendant relies upon *State v. Harrington,* 534 S.W.2d 44 (Mo. banc 1976) and *State v. Stapleton,* 539 S.W.2d 655 (Mo.App.1976). Both of these cases are distinguishable on the facts inasmuch as they involved the situation where major information bearing on the defendant's defense posture was not disclosed prior to trial. Here the testimony was offered to impeach appellant's credibility.

---

2. In fact the defendant raised the issue of alleged silence by claiming not to give the police an explanation. The state presented evidence that the defendant did not remain silent.

In addition, the state cannot be faulted for nondisclosure if the defendant has knowledge of such evidence. *State v. Sykes*, 628 S.W.2d 653, 657 (Mo.1982); *State v. Mitchell*, 622 S.W.2d 791, 797 (Mo.App.1981). The defendant knew his statements at trial were inconsistent with those he gave police when he was interrogated. Here the defense counsel was given an opportunity to interview the witness before he testified in rebuttal, and the court limited the scope of the prosecutor's questions to avoid disclosure of additional evidence of crimes.

■ Moreover, the nondisclosure did not result in fundamental unfairness, and the trial court did not abuse its discretion in refusing to impose sanctions. *See State v. Johnson*, 615 S.W.2d 534, 542 (Mo.App. 1981); *State v. Boyd*, 615 S.W.2d 436, 438 (Mo.App.1981). Defendant's second complaint is without merit.

■ Lastly, defendant claims that the court erred in failing to strike Juror Schaefer, who indicated he had a hearing problem. The judge determined that if the juror was seated in the front row there would be no problem as to the ability of the juror to hear. In *State v. Schleicher*, 442 S.W.2d 19, 21 (Mo.1969) the Supreme Court held that an alleged hearing defect is a disqualification which must be raised before a juror is sworn. No objection was made to the trial court's decision to move the juror to the front of the jury box. Furthermore, it was established that the juror could hear the proceedings in the front row. In *State v. Christian*, 604 S.W.2d 758, 760 (Mo.App. 1980) the court noted the wide discretion of the trial court in determining these matters, which decision should not be disturbed except for a clear abuse of discretion. *State v. Treadway*, 558 S.W.2d 646, 649 (Mo. banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978).

The judgment is affirmed.

KAROHL, P.J., and ROBERT LEE CAMPBELL, Special Judge, concur.