STATE of Minnesota, Respondent,

v.

Irene Joyce GARCEAU, Appellant.

No. CX–84–1455.

Court of Appeals of Minnesota.

June 18, 1985.

Review Denied Sept. 13, 1985.

Hubert H. Humphrey, III, Atty. Gen., State of Minnesota, St. Paul, Mark J. Thomason, Co. Atty., Park Rapids, for respondent.

Dickel, Johannson, Wall, Taylor & Rust, Crookston, for appellant.

Heard, considered, and decided by WOZNIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

WOZNIAK, Presiding Judge.

Following a jury trial in Pennington County District Court, Irene Garceau was convicted of two counts of theft by swindle under Minn.Stat. § 609.52, subds. 2 and 3 (1982 & Supp.1983), two counts of embezzlement of public funds under Minn.Stat. § 609.54, subd. 1 (1982), and one count of aggravated forgery under Minn.Stat. § 609.625, subd. 1(b) (1982). On appeal, Garceau contends that the evidence was insufficient to support those convictions and that the prosecutor improperly impeached a defense witness. We affirm.

## FACTS

The incidents leading to appellant Irene Garceau's convictions took place in the Hubbard County Clerk of Court's office in Park Rapids between June 1982 and January 1983. During this period, Darrel Casmey was the clerk of the Hubbard County District Court. Garceau, LuAnn Bolton and Margaret Torkelson were deputy clerks of court. Each deputy clerk had different areas for which she was responsible. Garceau was primarily responsible for district court matters; Bolton was responsible for county court matters; Torkelson was responsible for probate and conciliation court matters. Each of the deputy clerks was responsible for a checking account for her particular court division.

Following a routine audit in 1983 of the Hubbard County Clerk of Court's office, the Minnesota State Auditor's Office discovered that $2,819.25 was missing from the Clerk of Court's funds for the calendar year 1982. The auditors were able to attribute the shortage to five deposits that were never deposited in the clerk of court's account at the Citizens National Bank in Park Rapids. These deposits consisted of cash and checks. The five deposits involved are as follows:

| Date of Deposit | Total Deposit |
|---|---|
| 6/11/82 | $ 244.00 |
| 8/18/82 | 684.25 |
| 12/10/82 | 500.00 |
| 12/17/82 | 294.00 |
| 12/22/82 | 1,097.00 |
| Total: | $2,819.25 |

In addition to these missing deposits, the auditors discovered that two deposits prepared in 1982 were not received by Citizens Bank until January 14, 1983:

| Date of Deposit Slip | Date Actually Deposited | Total Deposit |
|---|---|---|
| 9/17/82 | 1/14/83 | $1,140.00 |
| 12/7/82 | 1/14/83 | 1,334.00 |
| | Total: | $2,474.00 |

The clerk of court and each of the deputy clerks of court testified concerning the accounting procedures used in the clerk's office. Both Torkelson and Bolton had vinyl bags containing a book of deposit slips with carbon copies and a deposit ledger. Garceau had a tin box with the same contents. When Garceau made a deposit at the bank, however, she used a vinyl bag. When the deputies received funds from the public, they would issue the payor a receipt, accumulate the funds, and prepare a deposit slip to deposit the funds in their particular account at the Citizens Bank. The deputies made deposits whenever it was necessary.

When the deputies took a deposit to the bank, they would give the bank teller the vinyl bag with the deposit. The teller would then verify that the amount of cash and checks received matched the amount indicated on the deposit slip, credit the appropriate account, initial the deposit slip, retain the original of the deposit slip, and enter the deposit in the ledger. When the teller was finished, the teller would return to the deputy the deposit slip book containing the carbon copy of the deposit ticket, the deposit ledger and the vinyl bag. Each deputy was responsible for reconciling her account with the monthly bank statement.

Each of the deputies testified that only occasionally would one of them take a deposit to the bank for one of the other deputies' accounts. The deputies also testified that Casmey would rarely take deposits to the bank for the deputies.

Garceau prepared the deposit slips for all five of the missing deposits and for both of the 1982 deposits that were not received by Citizens Bank until January 14, 1983. All of the deposits in question, except for the December 22, 1982 deposit, were deposits for the district court account, the account controlled by Garceau. The December 22, 1982 deposit was a deposit for the county court account, the account controlled by Bolton. Garceau testified that she prepared that deposit slip for Bolton because Bolton was on vacation. The original white copies of the deposit slips for all five of the missing deposits have never been found.

The carbon copies of the deposit slips for the June 11, 1982 and August 18, 1982 deposits bear the bank teller initials "J. Z." Both of these deposits were entered in the deposit ledger, and the teller initials "J.Z." accompany those two entries. Neither the June 11, 1982 nor the August 18, 1982 deposits were ever received by Citizens Bank.

The carbon copy of the deposit slip for the missing December 10, 1982 deposit bears the faint teller initial "L" in the lower left corner. In addition to preparing the missing December 10, 1982 deposit, Garceau also prepared a deposit on December 10, 1982 for a large check that the clerk's office had received from the State of Minnesota. This deposit was received by the bank on December 10, 1982 and the deposit slip for this deposit bears a dark "L" teller initial. There is an entry in the ledger for this deposit of the State of Minnesota check, but there is not an entry for the other December 10, 1982 deposit. The carbon copy of the deposit slip for the State of Minnesota check was immediately above the carbon copy of the deposit slip for the missing December 10, 1982 deposit in Garceau's deposit slip book. The dark teller initial "L" on the deposit slip for the State of Minnesota check is in exactly the same location as the faint initial "L" which appears on the deposit slip for the missing December 10, 1982 deposit.

The next missing deposit is evidenced by a deposit slip dated December 17, 1982. Garceau admitted preparing this deposit slip. This deposit was never received by Citizens Bank, the deposit slip bore no teller initial, and the deposit was not entered in the ledger book.

Garceau also prepared the deposit slip for the missing December 22, 1982 deposit. This deposit should have been made into the county court account controlled by Bolton. Garceau prepared the deposit slip because Bolton was on vacation. The carbon copy of the deposit slip bears the initials "J.Z." There is no corresponding entry in the ledger.

Torkelson testified that, on December 22, 1982, Garceau told her that she was taking Bolton's deposit to the bank. Bolton testified that after she returned from vacation, Garceau told her that she had taken the December 22, 1982 deposit to the bank and that the teller Jody Zieman had neglected to enter the deposit in Bolton's ledger.

The last two deposits which were the basis for Garceau's convictions were made on January 14, 1983. Garceau prepared two deposit slips for deposits in 1982. The bank's records and the bank's stamp on the back of the original white copy of the deposit slips show that these two deposits were not deposited until January 14, 1983. The carbon copy of the deposit slip for one of the two deposits bears the date of September 17, 1982. The original white copy of this deposit slip was dated September 17, 1982, but that date was whited out and changed to show a date of "1–14–83" before the deposit slip was received by the bank on January 14, 1983. The bank's microfilm copy of the original deposit slip (as it existed while it was being processed at the bank) shows a date of "1–14–83." After the bank returned the original deposit slip to the clerk's office, the date on the original deposit slip was changed to read "9–14–82." The funds that should have

been deposited on September 17, 1982 were missing between September 17, 1982 and January 14, 1983, the date the funds were deposited in the bank.

The other deposit that Garceau made on January 14, 1983 also had a time discrepancy. The carbon copy of this deposit slip bears a date of December 7, 1982. The original copy of the deposit slip was also dated December 7, 1982, but this date was whited out and changed to "Jan. 14, 1983" before the deposit was presented to the bank on January 14, 1983. Again, the funds that should have been deposited on December 7, 1982 were missing from that date until January 14, 1983.

After a jury trial, Garceau was convicted of two counts of theft, two counts of embezzlement of public funds, and one count of aggravated forgery. Garceau was sentenced to 15 months; the sentence was stayed on the condition that she pay a $2500 fine and serve six months in county jail.

## ISSUES

1. Is the evidence sufficient to support Garceau's convictions?

2. Did the prosecutor properly attempt to impeach a defense witness with evidence of bias?

## ANALYSIS

### I.

Garceau contends that the evidence failed to support a guilty verdict since her convictions were based solely on circumstantial evidence and that circumstantial evidence did not establish her guilt beyond a reasonable doubt.

■ In reviewing a claim of insufficiency of evidence, this court must interpret the evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved everything which contradicted their testimony. *State v. Vu*, 339 N.W.2d 892, 898 (Minn.1983). If the jury, giving due regard to the presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt, could reasonably have found Garceau guilty, the verdict will not be upset. *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984). In addition, a conviction based on circumstantial evidence can be sustained only when the reasonable inferences from such evidence are consistent only with Garceau's guilt and inconsistent with any rational hypotheses except that of her guilt. *State v. Threinen*, 328 N.W.2d 154, 156 (Minn.1983).

■ Viewing the evidence in the light most favorable to the State, the jury could have reasonably found Garceau guilty of theft by swindle, embezzlement of public funds, and aggravated forgery. In addition, the reasonable inferences the jury could have drawn from the circumstantial evidence were consistent only with Garceau's guilt and inconsistent with any of the other hypotheses that Garceau suggested.

Garceau was convicted of five separate offenses. There is sufficient evidence to support all five of the charged offenses. First, the jury found Garceau guilty of theft by swindle for appropriating to her own use more than $2,500 in deposits that should have been deposited in the Hubbard County Clerk of Court's account at the Citizens Bank on August 18, 1982, December 10, 1982, December 17, 1982 and December 22, 1982. None of those deposits was ever received at the Citizens Bank. Garceau admitted that she prepared all these deposits. Casmey testified that Garceau was the only clerk who was working each and every day that a deposit disappeared.

Jody Zieman, the only teller at Citizens Bank who used the initials "J.Z." on deposit slips and ledger entries in 1982, testified that she did not make the initials "J.Z." which appear on the carbon copy of the August 18, 1982 deposit slip and the corresponding entry in the ledger. Nor did she make the initials "J.Z." which appear on the carbon copy of the December 22, 1982 deposit slip. A BCA lab analyst testified that the "J.Z." initials appearing on the

deposit slip dated December 22, 1982 and the August 18, 1982 ledger entry were inconsistent with Jody Zieman's handwriting characteristics. (The analyst could not reach a conclusion concerning the "J.Z." initials on the August 18, 1982 deposit slip.) The analyst also testified that the August 18, 1982 ledger entry was consistent with Garceau's handwriting characteristics.

Linda Grover, the only teller at Citizens Bank who used the initial "L" on deposit slips and ledger entries in 1982, testified that she did receive and initial the deposit slip for the State of Minnesota check from the clerk's office on December 10, 1982, but she did not receive a second deposit consisting of $500 in cash and checks that same day. Our review of the evidence shows that when Linda Grover initialed the deposit slip for the State of Minnesota check, there was a second piece of carbon paper in the deposit slip book that allowed her initial "L" to appear on the next deposit slip in the book. The faint initial "L" on the carbon copy of the deposit slip for the missing December 10, 1982 deposit is consistent with this theory. The faint initial "L" is in exactly the same position as the "L" on the deposit slip for the State of Minnesota check deposit.

Glover also testified that if she had received the missing deposit without an accompanying deposit slip, her teller drawer would not have balanced. As it was, her teller drawer did balance correctly on December 10, 1982.

The missing December 17, 1982 deposit was never received by the bank. The carbon copy of the deposit slip does not bear any teller initials and the ledger does not have a corresponding entry.

Garceau was also convicted of theft by swindle for exercising temporary control over $2,474 in cash and checks. These funds represent the two deposits made at Citizens Bank on January 14, 1983. The evidence showed that one of the deposits should have been made on September 17, 1982 and the other deposit should have been made on December 7, 1982. The

dates on both the original deposit slips had been whited out and changed.

Garceau was also convicted of embezzlement of public funds for converting $244 of the clerk of court's funds to her own use on June 11, 1982. The carbon copy of the deposit slip bears the teller initials "J.Z." Again, Jody Zieman testified that the initials were not in her handwriting and she did not receive that deposit at the bank on June 11, 1982. The BCA lab analyst testified that the "J.Z." initials appearing both on the June 11, 1982 deposit and the corresponding ledger entry were inconsistent with Zieman's handwriting characteristics.

Garceau was also convicted of embezzlement of public funds for converting $1097 in cash and checks to her own use on December 22, 1982. The December 22, 1982 deposit was to be made into the county court account that Bolton controlled. This deposit was also one of the grounds for Garceau's conviction of theft by swindle.

Finally, Garceau was convicted of aggravated forgery for falsely entering Zieman's initials on the August 18, 1982 deposit slip and the corresponding deposit entry. The August 18, 1982 deposit was also one of the grounds for Garceau's conviction of theft by swindle.

Garceau contends that many reasonable inferences can be drawn from the circumstantial evidence which are inconsistent with her guilt. We disagree.

First, she argues that a reasonable inference can be made that the deposits were lost. This inference, however, is entirely inconsistent with the evidence. It seems inconceivable that the bank would only lose deposits which Garceau prepared. In any event, bank employees testified that the bank has never lost deposits. There was also overwhelming evidence indicating that the deposits never reached the bank.

The deposits could not have been lost in the clerk of court's office either. Garceau admits she prepared all the deposit slips. And it is certain that she at least took the December 22, 1982 deposit out of the

clerk's office. Garceau told both Torkelson and Bolton that she took the December 22, 1982 deposit to the bank. Furthermore, four of the five carbon copies of the missing deposits have initials written on them. The presence of these teller initials is inconsistent with the theory that the deposits were lost in the clerk's office. Finally, this theory does not explain the delayed deposits of September 17, 1982 and December 7, 1982.

Garceau also argues that a reasonable inference can be made that the missing deposits were stolen by Citizens Bank employees. Again, this inference is inconsistent with the evidence. If the bank was involved in the thefts, many employees would necessarily have been involved. It is highly unlikely that such a conspiracy would go undiscovered. Excluding the problem with the one deposit to the county court account, the district court account is the only account with which the bank had problems. It seems implausible that bank employees would only embezzle from the account that Garceau controlled.

Finally, Garceau claims the evidence was consistent with the inference that Casmey stole the deposits. It is obvious from the evidence that Casmey and Garceau had serious personality conflicts. There is, however, no evidence that would connect Casmey with the missing deposits. He rarely took deposits to Citizens Bank. He was not involved at all in that part of the office's procedures. Furthermore, Garceau told both Torkelson and Bolton that she had taken the December 22, 1982 deposit to the bank and had made that deposit. This evidence is inconsistent with the theory that Casmey stole the deposits.

The only reasonable inferences that the jury could have drawn from the circumstantial evidence were consistent only with Garceau's guilt. The evidence was sufficient to support Garceau's convictions.

## II.

Garceau claims that the prosecutor improperly attempted to impeach defense witness Sheriff Larry Johnson.

Sheriff Johnson, the chief law enforcement officer in Hubbard County, testified on Garceau's behalf at trial. Sheriff Johnson was a member of the panel who hired Garceau as a dispatcher in the Sheriff's Department in July 1983 (after allegations had been made against her). He was also initially involved in the investigation of the missing clerk of court's deposit. Sheriff Johnson testified that, during his part of the investigation, Garceau was the most cooperative person in the clerk's office. On cross-examination, the prosecutor questioned Sheriff Johnson as follows:

Q. Now you testified that you are acquainted with the defendant Irene Garceau?

A. That is correct.

Q. You are very well acquainted with her, aren't you, Mr. Johnson?

A. Her and her husband both, yes.

Q. In fact in 1983 you had an affair with Irene Garceau, didn't you?

A. No, I did not.

Q. Would you like to explain to the jury then, Mr. Johnson, why you told Sheriff Terry Shannon of Becker County at the 1983 Sheriffs' Convention in Minneapolis about this affair.

Before Sheriff Johnson answered this question, Garceau's counsel made an objection and there was a conference in chambers. After the conference, the court gave the jury a cautionary instruction concerning impeachment evidence. The prosecutor then repeated her last question and Sheriff Johnson denied that he talked to Sheriff Shannon about having an affair with Garceau.

The day after Sheriff Johnson testified, Sheriff Terry Shannon of Becker County appeared before the court in chambers pursuant to a subpoena. Sheriff Shannon indicated on the record that his testimony in court would be that Sheriff Johnson told him that he (Sheriff Johnson) was having an affair with Garceau. Sheriff Shannon also expressed his concerns that the close working relationship between Becker County and Hubbard County would be seriously

jeopardized if he was required to testify. Because of Sheriff Shannon's concerns, the prosecutor decided to not call Sheriff Shannon as a witness. For all practical purposes, the prosecutor's decision to forego submitting additional testimony about the relationship between Sheriff Johnson and Garceau actually prejudiced the State's case. The prosecutor was prohibited from referring to the alleged relationship during the remainder of the trial, but during final arguments, the defense attorney was allowed to severely criticize the prosecutor's failure to offer any evidentiary support for her accusations.

The Minnesota Supreme Court has expressly recognized that evidence of a sexual relationship between a witness and a party is proper impeachment evidence to show bias. *State v. Waddell*, 308 N.W.2d 303, 304 (Minn.1981). *See also Dick v. Watonwan County*, 562 F.Supp. 1083, 1107 (D.C.Minn.1983), *rev'd on other grounds*, 738 F.2d 939 (8th Cir.1984).

Garceau appears to argue that the prosecutor was trying to show Sheriff Johnson's bias on the basis of specific instances of conduct and, pursuant to Minnesota Rule of Evidence 608(b), those instances of conduct cannot be proved by extrinsic evidence. Arguably, the prosecutor did not even submit any extrinsic evidence since she did not go beyond cross-examining Sheriff Johnson about the alleged relationship. Even if the present case deals with extrinsic evidence used to show bias, the prosecutor properly questioned Sheriff Johnson.

In contrast to extrinsic evidence bearing on veracity, Rule 608(b) does not bar the use of extrinsic evidence to prove a witness' bias. *Watonwan County*, 562 F.Supp. at 1106; *United States v. Brown*, 547 F.2d 438, 445–46 (8th Cir.), *cert. denied*, 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977). The general rule dealing with extrinsic evidence of bias is:

> [I]f the witness on cross-examination denies or does not fully admit the facts claimed to show bias, the attacker has

the right to prove those facts by extrinsic evidence.

McCormick on Evidence § 40 at 81 (2d ed. 1972).

Thus, in an attempt to impeach Sheriff Johnson by showing his potential bias, the prosecutor properly asked Sheriff Johnson about his relationship with Garceau. The prosecutor also properly asked Sheriff Johnson about his conversation with Sheriff Shannon in an attempt to prove that relationship.

### DECISION

There is sufficient evidence to support appellant's convictions.

The prosecutor properly attempted to impeach a defense witness with evidence of bias.

Affirmed.