**STATE of Minnesota, Respondent,**

v.

**Bradley James BUCHMANN, Appellant.**

**No. C1–85–981.**

Court of Appeals of Minnesota.

Feb. 4, 1986.

Hubert H. Humphrey, III, Atty. Gen., Janet Newberg Anderson, Sp. Asst. Atty. Gen., St. Paul, Stephen Torvik, Chippewa County Atty., David Gilbertson, Asst. County Atty., Montevideo, for respondent.

Allan Swen Anderson, Granite Falls, for appellant.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

HUSPENI, Judge.

Appellant Bradley Buchmann was found guilty of two counts of second degree assault under Minn.Stat. § 609.222 (1984). On appeal, Buchmann argues that a new trial should have been granted or the case should have been dismissed because: (1) there is insufficient evidence to support his convictions; (2) there was juror misconduct; (3) the prosecution failed to comply with the discovery rules; (4) the prosecution improperly impeached a witness; and (5) there was newly discovered evidence. We affirm.

## FACTS

On the evening of Friday, March 23, 1984, several young people from the Montevideo, Minnesota, area, congregated at a gas station parking lot. A dispute arose when one of the women thought that Michael Quigley and Jody Johnson had tried to hit her with the pick-up truck they were driving. Some yelling and shouting occurred, but no physical force was involved until Bradley Buchmann approached the group. A confrontation ensued between Buchmann and Jody Johnson that ended with Johnson putting Buchmann in a headlock and pushing his head into the pick-up truck.

Subsequently, Buchmann left the scene but quickly returned with a folding knife. There was conflicting testimony about whether the blade was actually extended. Quigley and others testified that the blade was extended and that Buchmann pressed the knife into Quigley's abdominal area causing a scrape on his side. Witnesses further testified that, as Quigley moved away, he tripped and fell into the street. Buchmann stood over Quigley and poked the knife at Quigley's feet which were up in the air.

Johnson then yelled at Buchmann to distract him and Buchmann chased Johnson until Johnson jumped into the pick-up truck. After this incident everyone got in their respective vehicles and drove away. Quigley and Johnson testified that they discussed reporting the incident to the police and decided not to pursue the matter.

The animosity between the young men continued the next day. Buchmann and some of his friends were parked on a side street when Johnson and some of his friends drove past them and Johnson yelled derogatory remarks at Buchmann. Eventually Johnson and his friends followed Buchmann's car into the Dairy Queen parking lot. The occupants of Buchmann's car were already out of the car when Johnson arrived. Only Johnson got out of the car in which he was riding. Johnson continued yelling and started to approach Buchmann's car. Buchmann reacted by hitting Johnson on the back of the head with an ax handle that he had removed from the trunk of his car. Johnson fled on foot and the incident ended.

Once again Johnson did not report the incident to the police. Later that same evening, however, Johnson began to feel the effects of being hit with the ax handle and he was taken to the hospital emergency room. Someone at the hospital called the police because of the nature of the injury.

Following a police investigation, Buchmann was charged with three counts of second degree assault: for the incident involving Quigley on March 23, for the incident involving Johnson on March 23, and for the incident involving Johnson on March 24. The jury found Buchmann guilty of the March 23 assault on Quigley and the March 24 assault on Johnson.

The case was tried before a jury on January 22, 23, and 24, 1985. On February 1, 1985, the trial judge contacted both parties about an incident involving one of the jurors from Buchmann's trial. During the voir dire examination of prospective jurors for another trial, one of the jurors from Buchmann's trial indicated that she did not believe the defendant (Buchmann) was guilty even though she voted that way. Based on this information, Buchmann requested a *Schwartz* hearing which the trial court denied.

## ISSUES

1. Was there sufficient evidence to find Buchmann guilty of two counts of second degree assault?

2. Did the trial court abuse its discretion when it denied Buchmann's request for a *Schwartz* hearing?

3. Did the trial court abuse its discretion when it refused to grant a new trial as a sanction for the prosecution's failure to comply with the discovery rules?

4. Did the prosecution's impeachment of one of its own witnesses constitute prosecutorial misconduct?

5. Did the trial court abuse its discretion when it refused to grant a new trial based on newly discovered evidence?

## ANALYSIS

### I.

### Sufficiency of the Evidence

On appeal, this court's scope of review is limited to determining whether based on the evidence a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). This court interprets the evidence in the light most favorable to the prosecution and assumes that the jury believed the State's witnesses and disbelieved any evidence which contradicted their testimony. *State v. Caldwell*, 322 N.W.2d 574, 586 (Minn.1982).

For a conviction of second degree assault the State must prove beyond a reasonable doubt that the defendant acted with the intent of causing another to fear immediate bodily harm or death or the intent to inflict bodily harm upon another. Minn.Stat. §§ 609.02, subd. 10, 609.222 (1984). The State must also prove that the defendant used a dangerous weapon. Minn.Stat. § 609.222. If the defendant raises the issue of self-defense, the State then has the additional burden of proving that the defendant did not act in self-defense. *State v. Harvey*, 277 N.W.2d 344 (Minn.1979). Minn.Stat. § 609.06(3) (1984) allows the use of force that is reasonably necessary to resist or aid another to resist an offense against the person.

In the present case there is sufficient evidence to sustain both convictions. Several eyewitnesses, including the victim, testified that they saw Buchmann threatening Quigley with a knife on the evening of March 23. While Buchmann testified that the knife blade was folded, several other witnesses testified that the blade was open. Similarly, several witnesses, including the victim, testified that Buchmann struck Johnson with the ax handle. Buchmann himself produced the knife and ax handle used in the assaults.

There was also sufficient evidence for a jury to find that Buchmann did not act in self-defense during these confrontations.

There was no testimony that Quigley had physically threatened Buchmann in any way or that Quigley was armed. Several witnesses testified that, during the assault on Johnson on March 24, Johnson had no weapon and while he was yelling at Buchmann he had in no way physically threatened him. A defense witness testified that Buchmann delivered the blow suddenly and unexpectedly and that Johnson did not have a chance to block the blow. Under these facts a jury could have found that Buchmann was not using reasonable force to prevent injury when he hit Johnson.

## II.

### Juror Misconduct

Buchmann argues that the trial court should have granted a new trial or at least a *Schwartz* hearing based on one of the juror's comments during voir dire for another trial. The juror stated that she had not believed that Buchmann was guilty but she eventually went along with the rest of the jurors.

■ The appropriate procedure for examining claims of juror misconduct is a *Schwartz* hearing. Trial courts have "fairly broad discretion" in deciding whether to grant such a hearing. *State v. Stofflet,* 281 N.W.2d 494, 498 (Minn.1979). Trial courts are encouraged, however, to be liberal in their grants. *Zimmerman v. Witte Transportation Co.,* 259 N.W.2d 260, 263 (Minn.1977).

The evidence that can be considered at such a hearing, however, is limited. Under Minn.R.Evid. 606(b):

[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or wheth-

er any outside influence was improperly brought to bear upon any juror.

Except for these limited areas of inquiry: [t]he verdict as finally agreed upon and pronounced in court by the jurors must be taken as the sole embodiment of the jury's act.

*Olberg v. Minneapolis Gas Co.,* 291 Minn. 334, 340, 191 N.W.2d 418, 422 (1971).

■ After the jury had given its verdict, the trial judge polled each member of the jury and each member answered affirmatively, and the jury was discharged. Absent a showing of juror bias or prejudice or outside influence, claims of second thoughts are too late and cannot be used to impeach a verdict. *See United States v. Schroeder,* 433 F.2d 846, 851 (8th Cir.1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971).

■ Buchmann has not alleged any evidence of juror bias or prejudice or outside influence that could be examined at a *Schwartz* hearing. Buchmann's request for a *Schwartz* hearing is based on a juror's remarks that she had second thoughts or was unwilling in her assent to the verdict. Such testimony is not admissible under Minn.R.Evid. 606(b). The trial court did not abuse its discretion in denying a *Schwartz* hearing or a new trial because Buchmann presented no evidence that could properly be considered by the trial court.

## III.

### Compliance with Discovery Rules

The trial court found that the prosecuting attorney interviewed a witness to the March 23 assault the day before trial and obtained some possibly exculpatory evidence that should have been disclosed under Minn.R.Crim.P. 9.01. The evidence was that Quigley made a comment such as "should we hit them?" when he was driving near the woman who thought Quigley tried to hit her. Buchmann argues that the trial court abused its discretion by not ordering a new trial as a sanction for this failure to disclose.

■ The trial court has discretion in determining what sanction to impose for a failure to comply with the discovery rules. *State v. Smith*, 367 N.W.2d 497, 502 (Minn. 1985). When exercising its discretion, the court should consider:

the reason why disclosure was not made, the extent of prejudice * * * and the feasibility of rectifying any prejudice by a continuance.

*Id.*

■ A consideration of these factors shows that the trial court did not abuse its discretion in denying Buchmann a new trial. The evidence was not totally suppressed, but was presented during the State's direct examination of the witness. The trial court noted that the prosecution was not entirely sure what the witness's testimony would be until she took the stand. Also, the statement was not said in the presence of Buchmann or the others involved in the dispute. Therefore, it is highly unlikely that this evidence would have changed the result of the trial. Finally, at trial, defense counsel did not object or ask for a continuance. This would have been the appropriate course of action to follow so as to avoid any potential prejudicial effects of the evidence.

Buchmann claims that there were other instances where the prosecution did not disclose evidence until trial. None of this evidence was objected to at trial nor were the issues raised in Buchmann's post-trial motion. Therefore, the claims are not properly before this court and will not be reviewed.

## IV.

### Impeachment of Witness

■ Buchmann also argues that the prosecution acted improperly when it called one of the young women who was present at the March 23 incident as a witness. Buchmann contends that the only reason the prosecution called this witness was to impeach her and that the party calling a witness cannot do so solely to impeach that witness.

■ The prosecution in this case attempted to impeach the witness's testimony by showing bias, specifically that the witness had dated Buchmann for three months after the assaults. Such impeachment is proper. *State v. Garceau*, 370 N.W.2d 34, 40 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Sept. 13, 1985) (citing *State v. Waddell*, 308 N.W.2d 303, 304 (Minn.1981)).

## V.

### Newly discovered evidence

■ Shortly after trial, one of the defense witnesses signed an affidavit stating that a police officer offered her $100 to testify for the State. Buchmann argues that the trial court should have ordered a new trial based on this new evidence.

In order for new evidence to warrant a new trial, the defendant must show that the evidence was not known to the defense at trial and could not have been discovered with due diligence, that the evidence is material and that the evidence will probably produce an acquittal. *Kost v. State*, 356 N.W.2d 680, 682 (Minn.1984).

■ In this case, the evidence does not meet the high standard necessary to warrant a new trial. The evidence was presented by a defense witness and was known to that witness before trial. The defense should have been able to discover the evidence. Also, in light of all the other eyewitness testimony, it is highly unlikely that this evidence would have produced an acquittal at a retrial.

## DECISION

There was sufficient evidence to sustain Buchmann's convictions for second degree assault.

The trial court did not abuse its discretion when it denied Buchmann's request for a *Schwartz* hearing.

The prosecution's failure to disclose evidence did not prejudice Buchmann and the trial court did not abuse its discretion when it denied Buchmann a new trial on this ground.

The prosecution's impeachment of its own witness did not constitute prosecutorial misconduct.

The trial court did not abuse its discretion when it denied Buchmann's request for a new trial based on newly discovered evidence.

Affirmed.