**STATE of Minnesota, Respondent,**

v.

**Robert Wayne KANNIAINEN, Appellant.**

**No. C3-84-1426.**

Court of Appeals of Minnesota.

May 7, 1985.

Hubert H. Humphrey, III, Atty. Gen., Paul Kempainen, Asst. Atty. Gen., St. Paul, Pete Kasal, McLeod County Atty., Glencoe, for respondent.

C. Paul Jones, State Public Defender, Mary C. Cade, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Appellant Robert Kanniainen was convicted of criminal sexual conduct in the third degree, Minn.Stat. § 609.344(c) (1982). On appeal he claims the evidence was insufficient and that he was denied a fair trial by several evidentiary rulings. We affirm.

## FACTS

Appellant was accused of engaging in sexual penetration with Barbara Dyer using force or coercion in the early morning hours of September 10, 1983. Dyer was appellant's former girlfriend. She testified that while she was sleeping on the floor with a male friend, appellant entered her apartment and confronted them. Her companion fled. Appellant then spent the next several hours physically and sexually abusing her. After appellant fell asleep Dyer ran naked to a next door neighbor. She was bruised and trembling and crying.

Dyer testified that she met appellant in late July or early August 1983 while they were working for Green Giant in Glencoe, Minnesota. They dated; Dyer denied they ever had sexual intercourse. Around September 4 or 5, Dyer testified their dating relationship soured after appellant took $340 from her purse, promising to pay it back, and later gave her a black eye by striking her. Because she wanted to get her money back, Dyer continued seeing appellant and allowed him to "crash" at her apartment. On September 9th she went to her landlady who called the police. While getting a ride from the police chief she told him that appellant was AWOL from the Navy. The police chief found appellant and told him to stay out of Dyer's apartment, but did allow appellant to go with him to remove his things from the apartment. Appellant was then taken by the police chief to a friend's house. The police chief advised Dyer to lock and secure the apartment and have someone stay with her. Dyer asked the man she had dated the previous night to stay with her and he agreed. They eventually fell asleep and were awakened by appellant.

Appellant denied ever hitting Dyer. He claimed they had a sexual relationship all along and that Dyer consented to sex with him that night after her companion fled.

The jury convicted appellant as charged and appellant was sentenced to an executed sentence of 24 months imprisonment.

### ISSUES

1. Was the evidence sufficient?

2. Were the trial court's evidentiary rulings erroneous?

### ANALYSIS

#### I.

After reviewing the record, we are satisfied that the evidence is sufficient to sustain appellant's conviction.

#### II.

Appellant next claims the trial court erroneously admitted certain evidence.

1. First, the trial court allowed medical evidence of a hairline fracture of Dyer's jaw. On September 5, 1983 a hospital X-ray showed her jaw was intact, but on September 12, 1983, when X-rayed by Dr. Joseph Wong, an oral surgeon, it contained the fracture.

Appellant claims notice of this evidence was not provided prior to trial and that the trial court erred in not granting a continuance.

However, there was a three-day break in the trial and appellant did not call his own expert. Also, Dr. Wong admitted on cross-examination that the fracture could have been present two or three weeks before September 12th. Further, the medical report was provided as soon as the prosecutor became aware of the report. Sanctions for discovery violations are discretionary with the trial court. *State v. Lindsey*, 284 N.W.2d 368 (Minn.1979). There was no abuse of that discretion.

2. Appellant contends that the trial court erred in allowing certain *Spriegl* evidence, namely appellant's personal assault of Dyer on September 4th or 5th and appellant's AWOL status, without a *Spreigl* notice.

These matters were not *Spreigl* incidents which required a *Spreigl* notice, *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). They bore directly on the history of the relationship existing between the two parties. *State v. Marsyla*, 269 N.W.2d 2, 7 (Minn.1978); *State v. Boyce*, 284 Minn. 242, 260, 170 N.W.2d 104, 115 (1969). The assault was relevant in showing why she decided to break up with appellant and why she did not want him at her apartment. Appellant's AWOL status was relevant in establishing appellant's anger the night of September 9–10 for "narking" on him to the police, i.e., reporting his AWOL status.

3. Appellant challenges the trial court's refusal to admit evidence that Dyer had previously had consensual sexual rela-

tions with other men on short acquaintanceship.

Appellant failed to show a common scheme or plan "of similar sexual conduct under circumstances similar to the case at issue," as required by Minn.Stat. § 609.347, subd. 3(a) (1982) and Minn.R.Evid. 404(c).

## DECISION

Evidence was sufficient to sustain appellant's conviction for criminal sexual conduct in the third degree and the trial court's evidentiary rulings were not erroneous.

Affirmed.