PEOPLE v TAYLOR

Docket No. 79360. Submitted August 5, 1986, at Grand Rapids. Decided April 21, 1987. Leave to appeal denied, 428 Mich —.

Robert G. Taylor was convicted of receiving and concealing stolen property with a value greater than $100 following a jury trial in the Mason Circuit Court, John R. Carney, Jr., J. Defendant appealed, claiming, inter alia, that error requiring reversal occurred when the trial court admitted into evidence a letter written by defendant to a friend in which defendant incriminated himself. Defendant claimed that the prosecutor violated the parties' informal discovery agreement by failing to disclose to defendant and his counsel that such evidence would be used at trial.

The Court of Appeals *held:*

1. A duty to disclose evidence pursuant to a discovery agreement or court order is a continuing obligation; the prosecutor's failure to disclose the letter before commencement of the trial and his use of the letter without its prior disclosure was a violation of that obligation. However, the admission of undisclosed evidence in the exercise of a trial court's discretion regarding discovery does not result in a denial of a defendant's rights to due process nor does it require reversal where, as in this case, the evidence is otherwise admissible and pertains to something of which the defendant has knowledge independent of discovery of the evidence at issue.

2. Defendant approved the instructions given to the jury, failed to request the standard jury instruction on character witnesses, and, therefore, cannot claim on appeal that the trial court's failure to give such instruction was error.

3. Defendant's claim that the prosecution improperly intro-

---

REFERENCES

Am Jur 2d, Continuance § 27 *et seq.*

Am Jur 2d, Criminal Law §§ 770 *et seq.*; 998 *et seq.*

Am Jur 2d, Depositions and Discovery §§ 400 *et seq.*; 420 *et seq.*

Exclusion of evidence in state criminal action for failure of prosecution to comply with discovery requirements as to physical or documentary evidence or the like—modern cases. 27 ALR4th 105.

Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.

duced evidence during rebuttal which should have been offered in the case in chief could not be reviewed by the Court of Appeals since defendant failed to object at trial.

4. Defendant's claim of prosecutorial misconduct by the improper introduction of evidence of similar offenses by defendant is not supported by the record.

5. The trial court did not abuse its discretion in denying a motion to adjourn the trial because of the absence of a defense witness. The witness was not subpoenaed, was said to be out of state, and his eventual presence at trial could not be assured. Additionally, a stipulation as to what the witness would have testified if present at trial was given to the jury and defendant was not prejudiced by the absence of the witness since the testimony was cumulative.

Affirmed.

D. E. HOLBROOK, JR., J., concurred in the result reached by the majority solely for the reason that the prosecution's nondisclosure of the evidence in question related to that of which defendant had personal knowledge independent of discovery.

1. CRIMINAL LAW — DISCOVERY.

Informal discovery agreements are to be given the same effect as discovery orders; a prosecutor's duty to disclose evidence pursuant to a discovery agreement or order is a continuing obligation; a prosecutor's failure to disclose evidence before the commencement of trial and his use of such undisclosed evidence constitute a violation of the duty of disclosure.

2. CRIMINAL LAW — DISCOVERY — VIOLATIONS OF DISCOVERY ORDERS OR AGREEMENTS.

Trial courts have discretion to deal with questions of noncompliance with discovery orders or agreements; in fashioning remedies in the exercise of that discretion, there must be a fair balancing of the interests of the courts, the public, and the parties; the exclusion of otherwise admissible evidence on the basis of nondisclosure is a remedy which should follow only in the most egregious cases.

3. CRIMINAL LAW — TRIAL — CONTINUANCES.

Grants of continuances and adjournments are within the discretion of the trial judge, but the exercise of such discretion is invoked only by a showing of good cause and diligence; conversely, it is an abuse of discretion on the part of the trial judge to deny adjournment to a party who can show good faith and diligence if that party is prejudiced by the denial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Cris J. Van Oosterum,* Prosecuting Attorney, and *Tonatzin M. Alfaro Garcia,* Assistant Attorney General, for the people.

*Alphonse Lewis, Jr.,* for defendant.

Before: HOOD, P.J., and D. E. HOLBROOK, JR., and W. R. PETERSON,* JJ.

PETERSON, J. This case calls for a reexamination of *People v Florinchi,* 84 Mich App 128; 269 NW2d 500 (1978), lv den 405 Mich 828 (1979), *People v Pace,* 102 Mich App 522; 302 NW2d 216 (1980), and *People v Turner,* 120 Mich App 23; 328 NW2d 5 (1982), dealing with prosecutorial failure to comply with discovery agreements and orders.[1] Those cases equated such noncompliance with an unconstitutional denial of due process,[2] and *Pace* reduces the entire problem to one test unless such undisclosed evidence is excluded at trial:

> Where a prosecutor has violated a discovery order—even if done inadvertently in good faith—*unless it is clear that the failure to divulge was harmless beyond a reasonable doubt,* we will reverse. [102 Mich App 530-531. Emphasis added.]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] It is particularly appropriate to reconsider these cases at this time when proposed rules of criminal procedure are being considered for adoption in this state. See 422A Mich 1 (1985) and particularly proposed rule 6.212. See also Grano, *Implementing the objections of procedural reform: The proposed Michigan Rules of Criminal Procedure—Part I,* 32 Wayne L R 1007 (1986).

[2] See also *People v McConnell,* 124 Mich App 672; 335 NW2d 226 (1983). We note that there are several other decisions which speak of "fundamental fairness" in cases involving noncompliance with discovery orders, but which do not apply a constitutional due process standard, e.g., *Harbor Springs v McNabb,* 150 Mich App 583; 389 NW2d 135 (1986); *People v Denning,* 140 Mich App 331; 364 NW2d 325 (1985); *In re Bay Prosecutor,* 109 Mich App 476; 311 NW2d 399 (1981).

We disagree, not with the proposition that prosecutors ought to be bound by discovery orders or their own discovery agreements, but with the view that this procedural problem should be elevated to constitutional rank and locked into an inflexible remedy.

It is anomalous that otherwise admissible evidence should be excluded as the penalty for failure to comply with a discovery order or agreement when the discovery provisions of the Michigan Court Rules are expressly made inapplicable to criminal cases.[3]

It is anomalous that otherwise admissible evidence should be excluded as the penalty for failure to comply with a discovery order or agreement made without the authority of rule or statute when such a remedy would not necessarily or even ordinarily follow in jurisdictions where discovery is authorized by rule or statute.[4]

It is anomalous that in this state where discov-

---

[3] MCR 6.001(B).

[4] Thus, Rule 16(d)(2) of the Federal Rules of Criminal Procedure provides a choice of remedies for nondisclosure:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing the evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Procedural rules or statutes in many states duplicate the federal rules or go to even greater length in enumerating possible remedies for nondisclosure, e.g., Fla R Crim P 3.220(j); La Code Crim P 729.5A; Mo Sup Ct R 25.16; Ohio Crim R 16(E)(3); Pa R Crim P 305 (E). And as noted herein, exclusion of evidence is generally viewed as a harsh remedy, to be imposed only in rare and extreme circumstances.

Other remedies may also exist apart from those enumerated in rules or statutes dealing with discovery in criminal cases. Thus, the trial courts undoubtedly have powers that are inherent in the court's jurisdictional authority, or which may be specified by rule or statute, to deal with and impose sanctions for misconduct of counsel.

ery in criminal cases, without the imprimatur of
rule or statute, has evolved as a discretionary
matter,[5] the trial court should be allowed no dis-
cretion in handling problems of compliance with
its orders.[6]

[5] *People v Johnson,* 356 Mich 619; 97 NW2d 739 (1959); *People v
Ranes,* 58 Mich App 268; 227 NW2d 312 (1975). See also *People v
Freeman (After Remand),* 406 Mich 514; 280 NW2d 446 (1979); *People
v Borney,* 110 Mich App 490; 313 NW2d 329 (1981); *People v Baskin,*
145 Mich App 526; 378 NW2d 535 (1985); *Harbor Springs v McNabb,*
n 2 *supra,* all noting the discretionary nature of the trial court's
discovery practice, and the review of such questions for abuse of
discretion.

[6] To the contrary, the imposition of remedies for noncompliance
with discovery is, *Pace* and *Turner* excepted, considered to be a
discretionary matter. See *United States v Valencia,* 656 F2d 412 (CA
9, 1981), cert den sub nom *Duarte v United States,* 454 US 903; 102 S
Ct 411; 70 L Ed 2d 222 (1981); *United States v Euceda-Hernandez,* 768
F2d 1307 (CA 11, 1985); *United States v Andrus,* 775 F2d 825 (CA 7,
1985); *State v Lukezik,* 143 Ariz 60; 691 P2d 1088 (1984); *Hunter v
State,* 8 Ark App 283; 653 SW2d 159 (1983); *People v District Court of
2nd Judicial District,* 664 P2d 247 (Colo, 1983); *Hickey v State,* 484 So
2d 1271 (Fla App, 1986); *People v Norks,* 137 Ill App 3d 1078; 92 Ill
Dec 406; 484 NE2d 1261 (1985); *Stark v State,* 489 NE2d 43 (Ind,
1986); *State v Clark,* 446 So 2d 293 (La, 1984); *State v Dube,* 478 A2d
1138 (Me, 1984); *State v Smith,* 367 NW2d 497 (Minn, 1985); *State v
Johnson,* 702 SW2d 65 (Mo, 1985); *State v Hunt,* 184 NJ Super 304;
445 A2d 1186 (1981); *State v Misenheimer,* 304 NC 108; 282 SE2d 791
(1981); *State v Parson,* 6 Ohio 3d 442; 453 NE2d 689 (1983); *Common-
wealth v Melendez,* 326 Pa Super 531; 474 A2d 617 (1984), *State v
Quintal,* 479 A2d 117 (RI, 1984); *State v Smith,* 367 NW2d 497 (Minn,
1985).

As is seen, this discretion not only is implicit where a rule or
statute specifies alternative remedies for noncompliance but has been
held to exist in jurisdictions where discovery has evolved without rule
or statute.

In order to determine what remedy is appropriate in the exercise of
such discretion, the trial courts inquire into the reason for nondisclo-
sure; the nature, relevance and relative importance of the evidence;
the interests of the court and of the parties; and the feasibility of a
particular remedy under those circumstances. *State v Myers,* 10 Kan
App 2d 266; 697 P2d 879 (1985); *United States v Coronel,* 750 F2d
1482 (CA 11, 1985); *People v Hinton,* 122 Ill App 3d 89; 77 Ill Dec 487;
460 NE2d 791 (1984); *State v Ricci,* 472 A2d 291 (RI, 1984); *State v
Dyson,* 292 Or 26; 636 P2d 961 (1981).

Review on appeal then, is as to abuse of discretion. *United States v
Levine,* 700 F 2d 1176 (CA 8, 1983); *Hunter v State,* 8 Ark App 283;
653 SW2d 159 (1983); *Wilkerson v State,* 461 So 2d 1376 (Fla App,
1985); *Harris v State,* 425 NE2d 112 (Ind, 1981); *State v Mitchell,* 412
So 2d 1042 (La, 1982); *State v Misenheimer,* 304 NC 108; 282 SE2d

It is anomalous that the introduction of evidence which is authentic, relevant and otherwise admissible should result in a new trial as the penalty for failure to comply with a discovery order or agreement when such evidence would be unobjectionable on retrial.

It is anomalous that the use of otherwise admissible evidence to impeach a perjurious defendant should be perceived as due process "unfairness" because not previously disclosed to him even though evidence which is inadmissible for constitutional reasons may be so used,[7] and even where that evidence consists of his own statements.

The ultimate anomaly, of course, given that the purpose of discovery is to aid the judicial search for truth, would be to turn the procedures intended to accomplish that purpose into a substantive bar to the proof of that which is true and, by precluding proof of the truth, produce a miscarriage of justice, a wrong verdict. This is such a case: had the trial judge heeded *Pace* and excluded the evidence in question, all the other evidence in the case would have been seen in a different light and might well have resulted in the acquittal of a guilty man.

Defendant appeals his jury conviction of receiving and concealing stolen property of a value over $100, MCL 750.535; MSA 28.803. The stolen property in question was a pickup truck which was found in the possession of Calvin Veldt and George Lipponen, friends of the defendant. They testified that when defendant was visiting them at Brimley in the Upper Peninsula, he indicated that he could get a stolen pickup truck for Veldt cheap; that

791 (1981); *State v Fricke*, 13 Ohio App 3d 331; 469 NE2d 1035 (1984); *People v Merritt, supra.*

[7] *Harris v New York*, 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971); *United States v Havens*, 446 US 620; 100 S Ct 1912; 64 L Ed 2d 559 (1980).

they returned with defendant to his lower peninsula home in Mason County on January 28, 1982; that the truck in question was stored in defendant's garage; and that Veldt bought the truck from defendant for $2,000.

Defendant denied selling the truck to Veldt. He testified that, while visiting with Veldt and Lipponen at Brimley, he had told them that there were trucks for sale cheaper in Mason County than around Brimley; that Veldt and Lipponen then came to Mason County with him; and that they purchased a truck while he was not with them and under circumstances of which he had no knowledge. He also testified that he could not have kept a truck in his garage because the garage was full of junk and wood. In support of this latter testimony, defendant called witnesses who testified that they had been at defendant's residence on and shortly before January 28, 1982; that his garage was full of wood; and that there was no truck in the garage. Defendant also offered the testimony of character witnesses.

Unfortunately for defendant, his version of events, which might otherwise have seemed persuasive, and the depiction of his good character and truthfulness were destroyed during his cross-examination by a letter he had written to a friend, and by his ineffectual attempts to disavow the letter and then to explain it. The letter, received as an exhibit over objection,[8] clearly demonstrated

---

[8] Defendant claims that the letter was improperly received as an exhibit because it was not properly authenticated, but that claim was not preserved for appellate review by proper objection. The objection made at the time was for a different reason which was without merit and which is not pursued on appeal. An objection without proper reason is the same as no objection. *Brown v Weightman,* 62 Mich 557; 29 NW 98 (1886); *O'Donnell v Oliver Iron Mining Co,* 273 Mich 27; 262 NW 728 (1935)

The authentication objection is without merit in any event. While defendant would not admit writing the letter, he also said that he

defendant's guilt and asked the friend to put pressure on Veldt to change his story so as not to implicate the defendant.

After the proofs were closed, defendant's attorney raised a different question about the letter, apparently seeking a mistrial. He pointed out that he had made an informal discovery agreement with the prosecuting attorney as to prosecution evidence and that the prosecuting attorney had never disclosed the existence of the letter pursuant to the agreement. The prosecuting attorney acknowledged the existence of the informal discovery agreement, but waffled about compliance with it. He first attempted to deny noncompliance and to shift the onus to defense counsel by saying that he wasn't sure whether defense counsel had the letter, that he was "not prepared to say of record that he [defense counsel] absolutely, positively had a copy of the letter and lost it." When the trial judge tried to pin him down, the prosecutor then claimed that he had only learned of the letter the night before trial and that it was given to him the day of trial, but later he retreated into ambivalence, saying, "It is our policy to give everything we have and I would assume that if we have had it, then he should have gotten it, but I don't think we got it . . . ."

Without further inquiry,[9] the trial court accepted the prosecutor's claim that the existence of

---

would not deny writing it. He acknowledged that the letter was in his handwriting and that it bore his signature. He then went on to explain the letter by saying that it was written because he "wanted to get out of it." That constitutes "evidence sufficient to support a finding" of authenticity under MRE 901(a).

[9] Where the trial court has discretion as to how to handle claims of noncompliance with discovery orders, a hearing is required, not only to determine whether there has been a noncompliance but to inquire into the causes thereof, its impact, and any circumstances that might bear on the choice of an appropriate remedy. See e.g., *United States v Fernandez,* 780 F2d 1573 (CA 11, 1986); *Raffone v State,* 483 So 2d 761 (Fla App, 1986); *State v Smith,* 367 NW2d 497 (Minn, 1985). And see

the letter was unknown to the prosecutor until the night before the trial. Insofar as the trial court's comments might seem to hold that this excuses compliance with a discovery order or agreement, we disagree. An agreed or ordered duty to disclose is a continuing obligation; the prosecutor's failure to disclose the letter before the commencement of the trial and his use of the letter without its prior disclosure was a violation of that obligation.[10]

Neither do we agree with the trial judge's comments, finding it significant that there was no motion for discovery,[11] for we agree with *Florinchi* in its holding that discovery agreements are to be given the same effect as discovery orders. Given the agreement and given the prosecutor's failure to disclose the letter pursuant thereto, the trial court's finding that there had not been "any error committed by the Prosecutor" is erroneous. That is not, however, the critical inquiry here. Given the prosecutor's violation of the discovery agreement,

the concurring opinion of CYNAR, J., in *People v Pace,* 102 Mich App 535.

[10] There are countless cases in which last minute disclosure has been held appropriate so long as the prosecutor made the disclosure as soon as he became aware of the existence of the evidence. *Crafton v State,* 450 NE2d 1042 (Ind App, 1983). And see *State v Mitchell,* 412 So 2d 1042 (La, 1982), a case which has facts almost identical to this case, in which the court suggested that if the prosecutor, who heard about the letter the day before trial and got it after trial started, had disclosed it to the defense at any time prior to defendant's beginning his testimony, there would have been no prosecutorial error.

[11] The trial judge held:

And based on the fact you've not made any motion to produce and the People haven't led you to believe, at least of record, that they've produced any or all of those things they might be using against your client, I don't find there would be any problem in the reception of that document . . . .

The prosecutor, however, had just told the court that there was a discovery agreement, and the transcript of the pretrial conference not only confirms the discovery understanding but also contains an affirmative assertion by the prosecutor that he had disclosed his evidence to defense counsel.

the critical question is as to the appropriate response and remedy by the trial court.

Here the trial judge, though believing that there was no prosecutorial error, did precisely the right thing if we are to judge by what is done in our sister states and in the federal courts. He invited inquiry into whether and how defendant was prejudiced by the failure of the prosecutor to disclose the letter. His inquiry to defense counsel as to whether there might be any other witnesses that defendant would have called was an invitation to reopen proofs and to recess the trial until further inquiry could be made. Defense counsel made no such motions, however. His only showing of prejudice, other than the bald assertion thereof, was to say that even in hindsight it was difficult to say what might have been done differently other than to "perhaps" call the recipient of the letter. The trial judge concluded that if there had been "any error on the part of the People . . . it was harmless"; that although the letter was very damaging to the defense, it was admissible evidence to which no objection other than nondisclosure could be made. That reasoning clashes with *Pace* where, without any showing of actual prejudice, the Court applied a constitutional standard of review and assumed that the error could not be harmless beyond a reasonable doubt. *Pace,* too, involved the use of the defendant's own words for impeachment and the Court said, as the defendant now says here, that had defense counsel known of the statements he *might* have advised his client not to testify or *might* have adopted some strategy for minimizing their impact.

In 1978, *People v Florinchi, supra,* was the first Michigan case to address the question of a remedy for noncompliance with a discovery order or agreement. It was also the first Michigan case to speak

of discovery in terms of constitutional rights. In *Florinchi* a defense motion for discovery of police reports was denied on the basis of representations of the prosecutor that he had already furnished such reports to defense counsel pursuant to a voluntary discovery agreement.[12] At trial, however, cross-examination of a police officer revealed that there were undisclosed police reports ("tip sheets") bearing on the case containing names of witnesses who would or might be favorable to the defense, some of whom had left the state and were unavailable as witnesses.

The Court properly noted Michigan's long history of requiring the prosecution to produce at trial evidence that may bear on the innocence of the accused as well as on guilt,[13] and pointed out that *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), held that suppression by the prosecutor of evidence favorable to the accused was an unconstitutional denial of due process. Unfortunately, *Florinchi* did not go on to state a conclusion that violation of a discovery order resulting in nondisclosure of *exculpatory* evidence might also involve a violation of *Brady v Maryland.* Instead *Florinchi* used overbroad language putting discovery generally on a constitutional basis:

> At common law, defendant had no right to discover any evidence held by the prosecutor. *People v Johnson*, 356 Mich 619; 97 NW2d 739 (1959). Considerations of due process and fundamental fairness, however, led the courts to develop a rule that pretrial discovery of things admissible in

---

[12] As is already noted herein, *Florinchi* considered the prosecutor's agreement to disclose as binding upon him the same duty that would have been imposed by a court order for discovery.

[13] *People v Dellabonda*, 265 Mich 486; 251 NW 594 (1933); *People v Davis*, 52 Mich 569; 18 NW 362 (1884), and cases cited therein.

evidence was a matter within the sound discretion of the trial court, *People v Johnson, supra, People v Maranian,* 359 Mich 361; 102 NW2d 568 (1960). [84 Mich App 133-134.]

While the statement is correct in indicating that discovery has evolved in Michigan as a discretionary matter, it is incorrect in attributing that evolution to due process considerations. Neither *Johnson* nor *Maranian* so hold and no language in either can be so construed. To the contrary, *Johnson* quotes with approval from *State v Johnson,* 28 NJ 133; 145 A2d 313 (1958), including language that pretrial discovery is not constitutionally assured, and also cited *Cicenia v LaGay,* 357 US 504; 78 S Ct 1297; 2 L Ed 2d 1523 (1958), which held that denial of discovery did not constitute a denial of due process.

Two years after *Florinchi, Pace* was decided. In *Pace* an attempt was made to impeach the defendant by cross-examination as to prior inconsistent statements which statements had not been disclosed to defense counsel despite an explicit discovery order. Unlike *Florinchi,* the evidence was not exculpatory so the due process concerns of *Brady v Maryland* were not involved. Nonetheless, citing no authority other than *Florinchi, Pace* imposed a constitutional standard for review holding that prosecutorial noncompliance with a discovery order would always result in reversal unless harmless beyond a reasonable doubt, rejecting the arguments that the defendant need not be advised of his own statements,[14] and that evidence inadmissible for constitutional reasons could nonetheless be

---

[14] The rejection was based on the content of the statements, the court holding that they were not so obviously incriminating that the defendant would naturally remember them and divulge them to his attorney. *People v Turner, supra,* went the next step and said it was irrelevant whether the undisclosed evidence was obviously incriminating or not.

used for impeachment.[15] A year after *Pace, People v Turner, supra,* expansively described *Pace* in due process terms and then tersely described the noncompliance with the discovery order therein as harmless beyond a reasonable doubt.[16]

*Pace and Turner,*[17] if given face value, thus produce the following results:

1. Prosecutorial noncompliance with discovery orders or agreements, not only as to exculpatory but as to inculpatory evidence, is held to be an unconstitutional denial of due process;

2. Where there has been such noncompliance, the trial court has no discretion but must exclude

---

[15] See n 7. In so holding, *Pace* made no mention of *People v Lynn,* 91 Mich App 117; 283 NW2d 664 (1979), aff'd 411 Mich 291; 307 NW2d 61 (1981), which held that use of the defendant's undisclosed statements to impeach was permissible and that nondisclosure of defendant's own statements wasn't prejudicial since he must be presumed to know of them.

[16] Of like nature, see *People v McConnell,* n 2, *supra.*

We can find only two recent cases similar to *Pace* in facts and result. In *State v Mitchell,* n 10 *supra,* the allowance of the use in cross-examination of an undisclosed letter written by the defendant was held to be an abuse of discretion on the ground that defendant's opportunity to prepare his defense was prejudiced by the nondisclosure. In *Long v State,* 431 NE2d 875 (Ind App, 1982), the use of defendant's inconsistent oral statement in cross-examination was held to be a denial of due process and effective assistance of counsel, a holding which seems consistent with other Indiana cases holding that noncompliance with discovery orders gives the trial court discretion as to an appropriate remedy, e.g., *Stark v State, supra; Boyd v State,* 485 NE2d 126 (Ind, 1985); *Dudley v State,* 480 NE2d 881 (Ind, 1985); *Murray v State,* 479 NE2d 1283 (Ind, 1985); *Counceller v State,* 466 NE2d 456 (Ind, 1984); *Jacobs v State,* 436 NE2d 1176 (Ind App, 1982); *Crafton v State,* 450 NE2d 1042 (Ind App, 1983).

As noted hereafter, the rule elsewhere is that a failure to disclose the defendant's own statements or other evidence of which he has actual knowledge does not bar the use of such evidence against him.

[17] We note that in *People v McPherson,* 419 Mich 951; 357 NW2d 658 (1984), the Court summarily reversed an unpublished Court of Appeals decision and ordered a new trial in a case of prosecutorial noncompliance with a discovery order. The summary order turned solely on a construction of what the discovery order meant and did not consider the question of appropriate remedies for noncompliance with discovery orders.

the undisclosed evidence under pain of reversal unless the error is found to be harmless beyond a reasonable doubt, thereby excluding consideration of the causes of the noncompliance, good faith,[18] degrees of negligence, the nature and degree of prejudice resulting,[19] and whether some other remedy would be appropriate.

3. No exception is made for evidence of which defendant has independent knowledge, such as his own statements, not even for impeachment when

[18] We can find only one other case that would agree with the sweeping assertion in *Pace* that good or bad faith of the prosecutor is irrelevant. *State v Kaiu,* 692 P2d 1166 (Hawaii App, 1984), but compare *State v Marzo,* 641 P2d 1338 (Hawaii, 1982). To the contrary, holding that it is pertinent to what, if any, remedy should follow from the nondisclosure, see *United States v Soto,* 711 F2d 1558 (CA 11, 1983); *United States v Petito,* 671 F2d 68 (CA 2, 1982), cert den 459 US 824; 103 S Ct 56; 74 L Ed 2d 60 (1982); *People v Hunt,* 133 Cal App 3d 543; 184 Cal Rptr 197 (1982); *Hickey v State,* 484 So 2d 1271 (Fla App, 1986); *People v Fernetti,* 117 Ill App 3d 44; 72 Ill Dec 537; 452 NE2d 790 (1983), rev on other grounds 104 Ill 2d 19; 83 Ill Dec 375; 470 NE2d 501 (1984); *Wagner v State,* 474 NE2d 476 (Ind, 1985); *Boyd v State,* 485 NE2d 126 (Ind, 1985); *Counceller v State,* 466 NE2d 456 (Ind, 1984); *State v Myers,* 10 Kan App 2d 266; 697 P2d 879 (1985); *State v Scott,* 461 So 2d 426 (La App, 1984); *State v Mylon,* 462 A2d 1184 (Me, 1983); *State v Buchmann,* 380 NW2d 879 (Minn App, 1986); *State v Carter,* 185 NJ Super 576; 449 A2d 1362 (1982); *State v Parson,* 6 Ohio 3d 442; 6 OBR 485; 453 NE2d 689 (1983); *State v Babbit,* 457 A2d 1049 (RI, 1983); *Hernandez v State,* 636 SW2d 611 (Tex App, 1982).

[19] While the nature and degree of prejudice would presumably be an appropriate consideration in determining whether the admission of the evidence was harmless beyond a reasonable doubt, *Pace* and *Turner* assume prejudice. By this reasoning, whether the evidence is harmless beyond a reasonable doubt depends on the significance of the evidence in question when compared with the other evidence in the case. Decisions from other states more correctly note that introduction of evidence of incriminating nature is *always* prejudicial, and that the real issue is whether the defendant was substantially prejudiced by the *untimeliness* of its disclosure. See *Johnson v State,* 461 So 2d 1385 (Fla App, 1984). We note that there are some Michigan decisions which, though not speaking of an abuse of discretion standard of review of the trial court's treatment of noncompliance with discovery orders, seem to be applying that standard by examining the evidence in question in terms of its possible prejudice to the defendant, e.g., *People v Lynn, supra,* n 15; *People v Hayward,* 98 Mich App 332; 296 NW2d 250 (1980); *People v King,* 98 Mich App 146; 296 NW2d 211 (1980).

the defendant has testified differently if not down-right perjuriously.

There is, unnoticed in this evolution, an analogous Michigan precedent involving noncompliance with the statutorily mandated discovery as to alibis. In *People v Merritt,* 396 Mich 67; 238 NW2d 31 (1976), the defendant failed to provide the prosecution with the notice and disclosure required by the alibi statute.[20] As it then existed, the statute gave the trial court discretion to exclude alibi evidence where the statutory discovery had not been given, and the trial court did exclude the defendant's alibi evidence.

The Supreme Court reversed defendant's conviction and remanded for new trial, finding an abuse of discretion on the part of the trial judge. Drawing on *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972),[21] as to the means of determining whether an abuse of discretion has occurred, the Court said that merely to recognize the risk of false evidence was not enough since the exclusion of evidence is an "extremely severe" sanction "and the judge's discretion in exercising preclusion should be limited only to an egregious case." 396 Mich 82. The exercise of discretion, said *Merritt,* requires inquiry into all the pertinent circumstances, i.e., the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice.[22] The trial court must also recognize that it "has ample discretionary powers other than preclusion," 396 Mich 79, in providing a remedy for noncompliance with the statute, e.g., continuance.

---

[20] MCL 768.20; MSA 28.1043.

[21] *Williams* involved the exercise of discretion in considering a request for a continuance. See n 30, *infra.*

[22] The Court cited with approval *People v Robinson,* 54 Mich App 704; 221 NW2d 596 (1974), where a simple declaration by a prosecutor that he was prejudiced was held inadequate.

[W]hether the choice was an appropriate one
varies with the facts of each case, and must inevi-
tably involve a weighing of the competing interests
involved. Where the preclusion sanction is in-
volved these issues become: do the possible risk of
false testimony and the interruption in the orderly
process of justice justify this intrusion on defen-
dant's right [to present evidence]?

Obviously, there may be occasions when defen-
dant's delaying tactics or clear disregard for the
rules leave the trial court no other choice. At
times, however, perhaps because of late discovery
of witnesses despite a diligent search, or other
circumstances beyond the control of defendant and
his or her counsel, the interest of the state in
fullest discovery and a fair trial for defendant
might well outweigh any negative effects on the
trial process. [396 Mich 82-83.]

While this language speaks of a choice between
preclusion or continuance as to disclosure of alibi
witnesses, it would seem equally applicable to
discovery of any evidence, whether offered by the
defense or the prosecution, and actually under-
states the case against preclusion since there may
be appropriate discretionary remedies other than
continuance.

The decision in *Merritt* is sensible when one
considers the purposes of discovery. *People v John-
son, supra,* in recognizing the discretion of the
courts to allow discovery because of "the inherent
power of the trial court to control the admission of
evidence so as to promote the interests of justice,"
356 Mich 628, quoted with approval from *State v
Tune,* 13 NJ 203; 98 A2d 881 (1953), adhered to, 17
NJ 100; 110 A2d 99 (1954), cert den 349 US 907; 75
S Ct 584; 99 L Ed 1243 (1955), which in turn
quoted from 60 Yale L J 626:

The purpose of broad discovery is to promote the

fullest possible presentation of the facts, minimize the opportunities for falsification of evidence, and eliminate the vestiges of trial by combat. [356 Mich 621-622, n.]

While nothing in the subsequent history of discovery suggests that the third objective is attainable, neither has experience shown that the first two objectives are incompatible. As *Merritt* held, no good purpose would be achieved by shaping discovery procedures to limit the presentation of facts because of the risk of falsification of evidence if other means are available to minimize that risk. Rather, when noncompliance with a discovery statute, rule, order or agreement occurs, it is appropriate in resolving the problem to determine what legitimate interests of the courts and of the parties are involved and how they may be affected by the remedial choices available.

As to the courts, their paramount interest in discovery is that it should facilitate the search for truth to the end of producing a just result. As noted in *Merritt,* that is more important than the legitimate concern with prompt disposition of the court's calendar.[23] Continuance as a remedy to allow the opportunity to investigate tardily disclosed evidence does interfere with efficient court administration but it serves the greater public interest of insuring that the trial, when concluded, will not be skewed by the exclusion of trustworthy evidence. In that respect, the result of *Pace* not only militates against efficient court calendaring by requiring retrial (at which the undisclosed evi-

---

[23] *People v Turner, supra,* p 33, notes that discovery precipitates disposition of cases without trial, thereby reducing the court trial calendar. Noncompliance with discovery in this sense may impede pretrial settlements and thus adversely affect the court's calendar, but no more than no discovery at all; and, once trial has begun, that hardly seems important as a factor to consider in determining whether otherwise admissible evidence should be excluded.

dence would then be properly admissible), but affects the interest of the court and of the public by the additional expense involved and by the risk that a retrial may produce a wrong result because of the delays involved. And, while the courts have an interest in the integrity of their orders, nothing about noncompliance with a discovery order seems to be the moral or constitutional equivalent of an illegal search or coerced confession so as to justify the extreme sanction of exclusion of evidence without regard to its truth. Other sanctions are available and adequate to deal with counsel who cause the courts and opposing litigants expense and delay by noncompliance with court orders.

What legitimate interests does a party have in discovery which should be addressed and protected, and what remedies are appropriate when such interests are prejudiced by noncompliance with discovery orders or agreements?

Those interests are noted in the quotation from *Johnson,* above, i.e., the means to better prepare the party's own case,[24] and the opportunity to assay the opponent's evidence to "minimize the opportunities for falsification of evidence."[25] It is the latter interest with which we are primarily concerned where, as here, previously undisclosed evidence is offered which is unfavorable to the

[24] The primary thrust of trial preparation is the marshaling of evidence to prove relevant facts. Discovery enhances the likelihood that the litigant will find evidence favorable to his cause so that "the fullest possible presentation of the facts" will be made. To the extent that this entails disclosure by the prosecution in a criminal case of evidence favorable to the defense, due process is involved, not because discovery procedures are constitutionally founded but because the prosecution has a duty to disclose such evidence under *Brady v Maryland, supra,* whether discovery procedures exist or not.

[25] With the growth of concern about undue jury contamination from inadmissible evidence, discovery has the peripheral benefit of allowing a party to consider not only the authenticity of his opponent's evidence but also its admissibility as a matter of law and to raise such questions by pretrial motion in limine.

objecting party. It is not a valid objection to the use of such evidence that such evidence is "prejudicial" in the sense of being unfavorable; neither is it a valid objection that the offer of such evidence is a surprise,[26] though obviously the question of whether the objecting party is in fact surprised by the proffered evidence is pertinent to the determination of whether the nondisclosure warrants any remedy whatever.[27] The question, rather, in any

---

[26] If there really were some right to be free from surprise, the courts could never cope with the situation where evidence turns up for the first time during the course of trial. In a criminal case, would the court have to conduct a due diligence hearing comparable to those involving nondisclosure or nonproduction of res gestae witnesses? That "surprise" in itself is not a basis for excluding evidence may be seen from the countless cases holding that it is not a violation of a discovery order to use evidence of which the prosecution was not aware until trial, e.g., n 10 and *United States v Levine,* 700 F2d 1176 (CA 8, 1983); *Martin v State,* 482 So 2d 1272 (Ala Crim App, 1985); *People v Priest,* 672 P2d 539 (Colo App, 1983); *Johnson v State,* 461 So 2d 1385 (Fla App, 1984); *Ledesma v State,* 251 Ga 487; 306 SE2d 629 (1983); *Jacobs v State,* 436 NE2d 1176 (Ind App, 1982); *State v Williams,* 448 So 2d 659 (La, 1984); *State v Kanniainen,* 367 NW2d 104 (Minn App, 1985); *State v Brown,* 306 NC 151; 293 SE2d 569 (1982), cert den 459 US 1080; 103 S Ct 503; 74 L Ed 2d 642 (1982); *Commonwealth v Starks,* 450 A2d 1363 (Pa Super, 1982); *State v Babbitt,* 457 A2d 1049 (RI, 1983); *State v Crabtree,* 655 SW2d 173 (Tenn Crim App, 1983).

[27] So, other than *Pace* and *Turner,* and *State v Mitchell* and *Long v State* (noted in n 16, *supra*), the rule is that a defendant cannot be "surprised" or prejudiced by the use of evidence of which he has actual knowledge, e.g., (1) his own words, documents or acts, *United States v Draiman,* 784 F2d 248 (CA 7, 1986); *Terry v State,* 9 Ark App 38; 652 SW2d 634 (1983); *Hancock v State,* 158 Ga App 829; 282 SE2d 401 (1981); *State v King,* 311 NC 603; 320 SE2d 1 (1984); *Gregg v State,* 662 P2d 1385 (Okla Crim App, 1983); *State v Parry,* 684 SW2d 441 (Mo App, 1984), *People v Lynn,* n 15, *supra;* or (2) evidence of which he has knowledge from other sources, *Huffman v State,* 472 So 2d 469 (Fla App, 1985); *People v Moore,* 115 Ill App 3d 266; 71 Ill Dec 167; 450 NE2d 855 (1983); *People v Knighton,* 436 So 2d 1141 (La, 1983), cert den 465 US 1051; 104 S Ct 1330; 79 L Ed 2d 725 (1984); *Collins v State,* 251 Ga 521; 307 SE2d 496 (1983); *Castleberry v Crisp,* 414 F Supp 945 (ND Okla, 1976). A similar conclusion was reached in *People v Acosta,* 153 Mich App 504; 396 NW2d 463 (1986), involving the nondisclosure of the identity of a confidential informant whose identity was in fact known to the defendant.

The conclusion is even extended to cases involving evidence which is a matter of public record, *Conklin v State,* 254 Ga 558; 331 SE2d

given case is first, whether the party's interest in preparing his own case or his opportunity to test the authenticity of his opponent's evidence has been prejudiced by a noncompliance with a discovery order or agreement, and second, if that be the case, what remedy may be appropriate giving due regard to the competing interests of the opposing party, the court and the public. A remedy which would put the objecting party in a better position than he would have enjoyed had disclosure been timely made would seem of dubious value, particularly if it does violence to other legitimate interests in the case. It would be a contradiction in terms, for instance, to exclude a genuine and relevant document only because the objecting party had not had an opportunity to verify its authenticity.

We need not discuss all of the possible circumstances under which it might be determined that some remedy for nondisclosure would be warranted, or what remedies should apply in particular circumstances. Suffice it to say that we concur with the cases cited herein that the trial courts have discretion to deal with questions of noncompliance with discovery orders or agreements; that in fashioning remedies in the exercise of that discretion, there must be a fair balancing of the interests of the courts, the public, and the parties; and that the exclusion of otherwise admissible evidence is a remedy which should follow only in the most egregious cases.[28] In this case we find that

---

532 (1985), cert den — US —; 106 S Ct 606; 88 L Ed 2d 584 (1985), reh den — US —; 106 S Ct 1252; 89 L Ed 2d 359 (1986); *Beeson v State,* 651 SW2d 944 (Tex App, 1983), and evidence which the defendant should have known would be offered, *United States v Montoya,* 716 F2d 1340 (CA 10, 1983); *Terry v State,* 9 Ark App 38; 652 SW2d 634 (1983); *State v Sykes,* 628 SW2d 653 (Mo, 1982); *State v Thibeault,* 131 Ariz 192; 639 P2d 382 (Ariz App, 1981).

[28] Discussing remedies, see also *United States v Rodriguez,* 765 F2d

defendant was entitled to no remedy for the prosecutor's nondisclosure of the letter in question since the defendant, having written it himself, had knowledge of it independent of discovery.

Defendant's other claims of error are without merit, and some were not, in any event, preserved for appellate review by proper objection in the trial court. Thus, defendant claims that the trial judge failed to give the appropriate jury instruction on character witnesses, CJI 5:2:05; however, he not only failed to request that instruction but gave approval to the trial court's instructions as given. *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517, lv den 402 Mich 909 (1978); *People v Federico,* 146 Mich App 776; 381 NW2d 819 (1985). He claims that the prosecuting attorney improperly offered evidence on rebuttal that should have been offered in the case in chief, citing *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975),[29] but he made no objection thereto at trial. MRE 103(a) and (d); MCL 769.26; MSA

1546 (CA 11, 1985); *United States v Gee,* 695 F2d 1165 (CA 9, 1983); *United States v Friedman,* 107 FRD 736 (ND Ohio, 1985); *O'Neill v State,* 675 P2d 1288 (Alaska App, 1984); *Harris v State,* 12 Ark App 181; 672 SW2d 905 (1984); *In re Jesse L,* 131 Cal App 3d 202; 182 Cal Rptr 396 (1982); *Mendibles v Superior Court,* 162 Cal App 3d 1191; 208 Cal Rptr 841 (1984); *State v Festo,* 181 Conn 254; 435 A2d 38 (1980); *State v Del Gaudio,* 445 So 2d 605 (Fla App, 1984), lv den 453 So 2d 45 (1984); *Peterson v State,* 465 So 2d 1349 (Fla App, 1985); *Pittman v State,* 172 Ga App 22; 322 SE2d 71 (1984); *People v Davis,* 130 Ill App 3d 41; 85 Ill Dec 19; 473 NE2d 387 (1984); *State v Winter,* 238 Kan 530; 712 P2d 1228 (1986); *State v Clark,* 446 So 2d 293 (La, 1984); *Commonwealth v McGann,* 20 Mass App 59; 477 NE2d 1075 (1985); *State v Vaughn,* 361 NW2d 54 (Minn, 1985); *People v Napierala,* 90 AD 2d 689; 455 NYS2d 862 (1982); *State v Adams,* 67 NC App 116; 312 SE2d 498 (1984); *Commonwealth v Woodall,* 344 Pa Super 487; 496 A2d 1210 (1985); *State v Laureano,* 101 Wash 2d 754; 682 P2d 889 (1984).

[29] The claim is without merit. The evidence in question was extrinsic evidence of a prior inconsistent statement offered for impeachment. Extrinsic evidence to impeach is, by its nature, rebuttal evidence. Defendant's prior inconsistent statement, unlike the admission against interest in *Bennett,* was both immaterial and inadmissible hearsay until after defendant's testimony.

28.1096; *Taylor v Lowe,* 372 Mich 282; 126 NW2d 104 (1964); *People v Federico, supra.*

Defendant's claim of prosecutorial misconduct by the improper introduction of evidence of similar offenses by defendant is not borne out by the record. A prosecution witness volunteered a statement that could have been construed as meaning that he had gone to see defendant on a different occasion to buy stolen property. There is nothing to suggest that the prosecutor was intentionally trying to improperly bring out such a response from the witness. Moreover, the witness was quickly cut off by proper objection and the trial judge acted quickly and carefully in response and gave an appropriate curative instruction to the jury. *People v Philip Drake,* 142 Mich App 357; 370 NW2d 355 (1985).

Neither do we find merit in the claim that the trial judge erred by failing to grant a defense request to adjourn the trial because of the absence of a defense witness. Continuances and adjournments are within the discretion of the trial judge, but the exercise of that discretion is invoked only by a showing of good cause and diligence. *People v Charles O Williams, supra.*[30] Conversely, it is an abuse of discretion on the part of the trial judge to deny adjournment to a party who can show good cause and diligence if that party is prejudiced by the denial.[31]

GCR 1963, 503.2[32] dealt with adjournments be-

[30] *Williams* requires for good cause that the party (1) have a legitimate reason for (2) asserting a constitutional right, and that he be diligent in that (3) the reason not arise from his own neglect and (4) he not have been responsible for prior adjournments.

[31] *People v Wilson,* 397 Mich 76; 243 NW2d 257 (1976).

[32] MCR 2.503(C), reenacting GCR 1963, 503, is but the latest embodiment of a formal rule designed to deal with the problem of the last minute plea for continuance. See Michigan Court Rule 36 (1945). *People v Anderson,* 53 Mich 60; 18 NW 561 (1884), involving 1853 Circuit Court Rule 55.

cause of the absence of a witness or evidence:

> A motion to postpone or continue a trial due to the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts. A continuance shall be granted on the ground only if the court finds that the evidence is material and that diligent efforts have been made to secure the witness or evidence. If the testimony or the evidence would be admissible upon the trial, and the adverse party stipulates in writing or on the record that it shall be considered as actually given on the trial, there shall be no postponement or continuance unless the court, in the furtherance of justice, deems a continuance necessary.

Here, after the defense had presented a number of witnesses, the court was asked to recess the trial because of the absence of a witness who, it was said, was in New York. The witness, however, had not been subpoenaed and, obviously, as in *People v Gross,* 123 Mich App 467; 332 NW2d 576 (1983), and *People v Knox,* 364 Mich 620; 111 NW2d 828 (1961), no one could assure the court when, if ever, the witness would appear. As *Knox* held, the failure to attempt to secure the attendance of the witness by subpoena is such lack of diligence as to warrant the trial judge's denial of the motion for adjournment.[33]

In any event, the failure to have the supposed witness heard by the jury did not prejudice the defendant. In the first place, a stipulation as to what the witness would have testified if present was given to the jury as allowed by GCR 503, and that testimony was only cumulative of testimony

---

[33] Accord, *People v Collier,* 16 Mich App 695; 168 NW2d 623 (1969); *People v Masonis,* 58 Mich App 615; 228 NW2d 489 (1975); *People v Floyd,* 71 Mich App 462; 248 NW2d 586 (1976).

given by other defense witnesses.[34] In the second place, defendant was not prejudiced in the sense contemplated by *People v Wilson* in that a review of the entire record affirmatively shows that the claimed error did not result in a miscarriage of justice.[35]

Affirmed.

Hood, P.J., concurred.

D. E. Holbrook, Jr. *(concurring)*.

I concur in the result reached by the majority solely for the reason that the prosecution's nondisclosure of the letter in question related to a letter written by defendant himself and of which he had personal knowledge independent of discovery. Beyond these narrow confines I am, at present, unwilling to depart, choosing to revisit Judge Peterson's well-written opinion and the theories therein contained at a later day, on a case by case basis and as the need therefor arises.

---

[34] The absent witness would have testified, as had other defense witnesses, that at about the time of the sale of the stolen truck, he had been at defendant's home and had not seen any truck on the property.

[35] MCL 769.26; MSA 28.1096 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.