*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CD, Minor.

UNPUBLISHED
June 24, 2025
10:20 AM

No. 371098
Crawford Circuit Court
Family Division
LC No. 21-004622-NA

Before: MARIANI, P.J., and MALDONADO and YOUNG, JJ.

PER CURIAM.

Respondent-mother appeals by right the order terminating her parental rights to the minor
child, CD, under MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to
parent's home). In a scant, two-paragraph argument on appeal, respondent-mother asserts only
that the trial court erred by taking judicial notice of a separate personal protection order (PPO)
case between herself and CD's father, who was not a respondent in this matter, and that there was
no need to terminate her parental rights because she was jailed for violating the PPO. We affirm.

## I. BACKGROUND

This case was commenced approximately a month after respondent-mother's home was
raided by a police drug taskforce following three controlled purchases of prescription drugs from
respondent-mother, during which the police found and confiscated a dangerous butane-based THC
extraction lab from her garage. The minor child, CD, was placed in the care of his father in an ex
parte custody order entered in a custody case between the father and respondent-mother. The
father was simultaneously granted a PPO against respondent-mother. The same judge presided
over this case, the custody case, and the PPO proceedings.[1] The trial court took judicial notice of
the PPO proceedings in a contempt hearing in this case without objection by respondent-mother's

---

[1] The trial court also issued another PPO against respondent-mother while this case was pending.

-1-

attorney. Respondent-mother also was charged criminally, and a different judge presided over her criminal cases.

Almost three years after the raid and more than two years after the order of adjudication, the trial court issued a lengthy written opinion that summarized the voluminous testimony in this case. The trial court found that respondent-mother's noncompliance with petitioner, continued impulsivity and history of defiance, and lack of benefit from services showed that CD would likely be harmed if returned to her care. The trial court then found that respondent-mother's dishonesty, lack of insight, lack of accountability, and questionable judgment in recently marrying a felon showed that termination was in CD's best interests. The trial court noted that it had no assurance that CD would be kept safe through custody orders in the parallel custody proceeding because respondent-mother's conduct throughout this case and as reflected in the PPO case showed that she could not be trusted to follow any such orders.

## II. PRESERVATION OF ISSUES

A respondent must object in the trial court to the trial court's use of evidence. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). Respondent-mother expressly declined to do so when the trial court directly asked if she had any objection to the trial court taking judicial notice of the PPO matters at a contempt hearing in this case. Waiver does not require any particular language, but it "must be explicit, voluntary, and made in good faith." *In re MJC Minor*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 3. A party waives an issue by expressly declining a trial court's invitation to object to a matter. *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2000); *People v McDonald*, 293 Mich App 292, 295; 811 NW2d 507 (2011). If an issue is waived, there is no right to appeal. *People v Flores*, 346 Mich App 602, 608; 13 NW3d 668 (2023). However, "[o]ut of an abundance of caution," we will treat this issue "as merely forfeited rather than affirmatively waived." See *Flores*, 346 Mich App at 608-609.

## III. STANDARD OF REVIEW

An unpreserved error in a termination-of-parental-rights case is reviewed for plain error affecting substantial rights. *In re Ferranti*, 504 Mich 1, 29 & n 13; 934 NW2d 610 (2019). Under that standard, a clear or obvious error must have occurred, the error must have affected the outcome of the proceedings, and "the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 29 (quotation marks, brackets, and citation omitted). A "clear or obvious" error is an error "that is not subject to reasonable dispute," and an error generally affects substantial rights if it "affected the outcome of the lower court proceedings." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

## IV. ANALYSIS

A court may take judicial notice of its own files and records, including files and records from other cases before it. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). It was therefore permissible for the trial court to take judicial notice in this case of the files from the other PPO matters over which the same trial judge presided. Furthermore, much of the substance of what happened in the other PPO matters was placed on the record in this case. The trial court did

not err to the extent it took judicial notice of materials that were "largely cumulative." *In re AMAC*, 269 Mich App 533, 540-541; 711 NW2d 426 (2006). It is difficult to imagine that respondent-mother was unaware of what happened at the PPO hearings in which she participated, and her attorney represented to the trial court that respondent-mother had told the attorney what happened. A party generally cannot be surprised by the use of evidence of which the party had actual knowledge. *People v Taylor*, 159 Mich App 468, 487-488 & 486 n 27; 406 NW2d 859 (1987). Respondent-mother could have challenged the factual accuracy of the judicially noticed materials. See *AMAC*, 269 Mich App at 540; *In re Stowe*, 162 Mich App 27, 33 n 1; 412 NW2d 655 (1987). She did not. Accordingly, the trial court did not commit a "clear or obvious" error. See *Allen*, 507 Mich at 614.

Respondent-mother argues that "[t]he legal standard for a PPO is merely reasonable cause, which is a significantly lower standard" than either the preponderance-of-the-evidence standard or the clear-and-convincing evidence standard. However, the trial court emphasized that "the PPO hearing demonstrated that she clearly violated the court's order" and that respondent-mother's conduct was "a very blatant violation of the court's order" and not "a grey area." The record does not show that the trial court terminated respondent-mother's parental rights on the basis of facts established by an inadequate evidentiary standard.

Moreover, the trial court indicated that respondent-mother's conduct in the PPO proceeding was merely part of why it believed she could not be relied on to obey the trial court's orders. The trial court voluminously recounted evidence in the present case showing that respondent-mother was untrustworthy. Respondent-mother asserts that consideration of the PPO files prejudiced the trial court, but that there is no evidence in the record to suggest that the trial court regarded her conduct in the PPO matter as more than merely consistent with her conduct in this case. Respondent-mother cannot show that the trial court's consideration of the PPO files had any effect on the outcome of the proceeding.

Finally, respondent-mother also makes a one-sentence argument on appeal that she could not have posed any risk of harm to CD because she was jailed for violating the PPO. First, although respondent-mother is technically correct that she was sentenced to serve 14 days in jail for violating the PPO, the trial court almost immediately suspended that sentence. Additionally, "[t]he harm contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm." *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021). "[T]he fact of incarceration, plus the child's safe placement with another parent, does not eliminate the possibility of mental or emotional harm to a child victimized by the incarcerated parent." *In re Leach*, 347 Mich App 26, 33; 14 NW3d 178 (2023). Moreover, MCL 712A.19b(3)(j) also encompasses a parent's failure to protect a child from dangerous other individuals. *In re White*, 303 Mich App 701, 710-713; 846 NW2d 61 (2014). The trial court appropriately found no reason to believe that respondent-mother would not continue bringing drugs or dangerous individuals into her home, thereby exposing CD to further harm. Respondent-mother's argument that she posed no possible harm to CD is unsupported factually or legally.

Affirmed.

/s/ Philip P. Mariani
/s/ Allie Greenleaf Maldonado
/s/ Adrienne N. Young

-4-