# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

LEON HENRY HATHAWAY, III,

       Defendant-Appellant.

UNPUBLISHED
June 25, 2015

No. 320870
Saginaw Circuit Court
LC No. 13-038720-FC

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals his convictions, following a jury trial, of two counts of criminal sexual conduct, first degree (CSC I), victim under 13, MCL 750.520b(1)(a); two counts of CSC I, victim in household age 13 to 16, MCL 750.520b(1)(b)(*i*); and three counts of CSC II, victim under 13, MCL 750.520c(1)(a). The trial court sentenced defendant to serve prison terms of 25 to 50 years for each of the CSC I (victim under 13) convictions, 18 to 30 years for each of the CSI I (victim a household member between 13 and 16) convictions, and 10 to 15 years for each of the CSC II convictions. The victim was the daughter of T.K., with whom defendant had been living and in a relationship for 15 years by the time the crimes at issue came to light. The victim was one year old when the relationship began and believed defendant to be her biological father for ten years. The term for the second CSC I (victim under 13) conviction was to be served consecutive to the terms of all the other convictions, which were to be served concurrently with 320 days credit. Defendant appeals as of right, and we affirm.

Defendant first argues that the trial court erred in denying his motion for a mistrial based on the trial court's questioning of defendant. A trial court's decision to grant or deny a motion for a mistrial is reviewed for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "The court may interrogate witnesses, whether called by itself or by a party." MRE 614(b). However, a defendant has a right to a neutral and detached judge, and a trial court's examination of witnesses may not "pierce the veil of judicial impartiality." *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). The trial court "must not allow its views on disputed issues of fact to become apparent to the jury." *Cole v Detroit Auto Inter-Ins Exch*, 137 Mich App 603, 610; 357 NW2d 898 (1984).

Before questioning defendant, the trial court instructed the jury that it had "no position in this case," and did not "want [the jury] to think [it was] going one way or another because [it

-1-

asked] these questions" before asking defendant a number of questions. The trial court then had the following exchange with defendant:

>*The Court*. As I understand your defense, it's that this – none of this ever happened?

>*Defendant*. No, Sir.

>*The Court*. So you saw this young lady that's sitting in the back of the courtroom testify, and you saw her demeanor in front of the jury, you saw the tears that she had, and you're saying that's all lies, that's untrue.

>*Defendant*. It's all lies sir.

>*The Court*. And your [sic] saying it's untrue because you grounded her, you took her cell phone, and she was leaving the house when she wasn't supposed to, and because of these things, she's made these allegations and testified before this jury that – that you sexually assaulted her hundreds of times?

>*Defendant*. Yes, sir.

The trial court then asked defendant about the contents of letters he had admittedly written from prison to T.K., which included a plan to have T.K. convince the victim to not testify. The trial court asked whether defendant ever asked T.K. to convince the victim to tell the truth.

Defendant argues that the trial court's questioning demonstrated a bias against him and had the potential to influence the jury by highlighting the relative strengths of the theories of the parties. We agree that the trial court overstepped its bounds when it directly asked defendant to render an opinion as to whether the victim was lying: no witness, not even a defendant, may comment on the credibility of another witness. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). However, such questioning is not inherently unfairly prejudicial. *Id*. As a practical matter, the trial court's questions were little more than a blunt and succinct summary of defendant's theory of the case. Consequently, the trial court's questioning did not truly undermine defendant's defense, elicit any inconsistent testimony, inject any new theories, or demolish any theories in operation.

A trial court must avoid assuming the prosecutor's role with advantages unavailable to the prosecution. *People v Davis*, 216 Mich App 47, 51; 549 NW2d 1 (1996); *People v Sterling*, 154 Mich App 223, 228; 397 NW2d 182 (1986). Here, the questioning was *technically* improper, but the trial court twice made clear to the jury prior to questioning that it did not have a position in the case and was asking questions to clarify and expand on the defense, including defendant's claim that he was innocent and that the victim manufactured the allegations due to his setting limits on her behavior as a step-parent. The trial court's questions were permissible because they did not add to nor distort the evidence. *Davis*, 216 Mich App at 50. We are unable to conclude that the trial court's questions denied defendant a fair trial, and the trial court did not abuse its discretion in denying defendant's motion for a mistrial based on the trial court's examination of defendant.

Next, defendant argues that the trial court erred in allowing letters that defendant wrote to T.K. into evidence. The prosecution did not turn the letters over to defendant until the third day of trial, when T.K. provided to the prosecutor a bag of letters she had received from defendant while defendant was incarcerated and not previously disclosed. The prosecutor immediately offered them to defendant, with the caveat that she had not read them and therefore did not know whether she would use them. The prosecutor ultimately sought to admit six letters in which defendant discussed coordinating his testimony with T.K. or inducing the victim not to testify; the trial court gave defendant three hours to review those letters before T.K. read them into evidence. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *People v Briseno*, 211 Mich App 11, 14; 535 NW2d 559 (1995). The focus of a claim of inadequate discovery is whether fundamental fairness to the defendant, in preparing his defense, required that he have access to the requested information. *People v Walton*, 71 Mich App 478, 481-482; 247 NW2d 378 (1976).

Until the prosecutor herself learned of the letters, it would have been literally impossible for her to have intended to introduce them at trial, so the mandated disclosure under MCR 6.201(A)(5) could not have applied. The "surprise" disclosure of evidence is not a basis for excluding evidence because "it is not a violation of a discovery order to use evidence of which the prosecution was not aware until trial." *People v Taylor*, 159 Mich App 468, 487 n 26; 406 NW2d 859 (1987). The prosecutor properly disclosed and offered the evidence to defendant as soon as she became aware of them. More critically, whether defendant was actually surprised and the extent to which his ability to test the evidence for falsity are of paramount concern. See *id*. at 477, 485-487. Here, defendant wrote the letters himself, they were substantially similar to two other letters he had written to T.K. attempting to persuade the victim not to testify and which were already admitted during the victim's testimony, and under the circumstances the trial court allowed defendant ample time to review them for fabrication or other concerns prior to their admission. As was the case in *Taylor*, "defendant, having written [them] himself, had knowledge of [them] independent of discovery." *Id*. at 488. The trial court's admission thereof was not an abuse of discretion.

Next, defendant argues that the trial court erred in denying his motion for a mistrial as a result of the prosecutor asking questions implying that T.K. believed the statements of her daughter regarding the sexual abuse. As noted, witnesses may not comment on the credibility of other witnesses. *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014); *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). It is likewise improper for a witness to comment or give an opinion on whether a defendant is guilty. *People v Smith*, 158 Mich App 220, 230-231; 405 NW2d 156 (1987). Here, T.K. did not opine as to the credibility of the victim, but rather testified that she initially did not support the victim and remained close with defendant, but that her relationship with the victim changed over time. The prosecutor asked what factors produced the change, but defendant objected before T.K. could respond, and the trial court sustained the objection. The prosecutor's questions were not evidence, and the prosecutor specifically asked T.K. not to provide an opinion on whether she believed the victim. The trial court did not err in denying defendant's motion for a mistrial, it cannot be said that this testimony denied defendant a fair trial.

Next, defendant argues that the prosecutor committed misconduct during closing argument. The test of prosecutorial misconduct is whether the defendant was denied a fair and

impartial trial. *Dobek*, 274 Mich App at 63. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused, *id.* at 63-64, or encourages jurors not to make reasoned judgments. *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003). Defendant specifically argues that the prosecutor made inflammatory comments intended to produce sympathy for the victim. A prosecutor may not appeal to the jury to sympathize with the victim. *People v Wise*, 134 Mich App 82, 104; 351 NW2d 255 (1984). However, prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case. *People v Unger* (*On Remand*), 278 Mich App 210, 236; 749 NW2d 272 (2008).

The prosecutor commented on certain religious themes in the letters defendant wrote, in which he suggested ways T.K. could influence the victim to not testify, which also contained religious statements about the role of God in defendant's relationship with T.K. and a promise to go along with T.K.'s request to find a church. The prosecutor's somewhat sarcastic rhetorical question about whether God put the couple together for the purpose of influencing the victim's testimony was colorful but fairly based on the evidence and not an improper reference to defendant's invocation of his faith. Another letter opined that the pressure T.K. was putting on the victim was working because the victim almost killed herself and defendant would have been "out of here." In light of other letters expressing defendant's desire to pressure the victim and the victim's testimony that she attempted suicide after she read the letters, the prosecutor's commentary that, "[Victim] almost killed herself. Yeah, no witness" and "[T.K]'s not doing her job anymore" were vivid but reasonable comments given the contents of the letters and the timing of the victim's suicide attempt.

The prosecutor also stated that a normal 12-year-old should be doing things other than being molested at home, and suggested that defendant would molest the victim's younger sister if she sat on defendant's lap. The first comment was made in the context of a discussion of the victim's attempted suicide as a response to both the abuse and to the aftermath of reporting the abuse, as opposed to being a behavioral problem. This argument was reasonable after the defendant tried to explain the attempted suicide as a reaction to being disciplined for misbehavior. Regarding the second comment, the prosecutor argued that the defendant might have been compelled to touch the younger sister if she had been allowed to sit on his lap. This inference can be made from the evidence that the younger sister was upset due to not being allowed to sit on defendant's lap by defendant himself. The prosecutor argued that defendant did not want the victim's sister in his lap because he did not want to molest her as well. We do not find either comment to be an improper argument from the evidence or in context.

The only prosecutorial remark we find troubling is the prosecutor's comment that defendant wanted the victim to sleep in the room with him and T.K. The prosecutor argued that defendant had the victim sleep in their room after she was caught sneaking out of her room at night. T.K. had responded affirmatively when asked if she had the victim sleep on the floor in their bedroom after the behavioral trouble. Consequently, it is at least ambiguous whether the evidence supported attributing the victim sleeping in the room to defendant. However, the trial court responded to defendant's timely objection by stating that the jury would have to recall what

the facts were. The trial court further properly instructed the jury that the attorneys' arguments and statements were not evidence and that the jury should only accept statements that were supported by evidence. Jurors are presumed to follow these instructions and we therefore conclude that any prejudice was alleviated. *Unger*, 278 Mich App at 237. Furthermore, in the context of the entire trial, this was a relatively minor point.

Defendant also argues that his trial counsel was ineffective in failing to object to the some of the prosecutor's remarks. Even if a defendant's trial counsel renders deficient performance, a defendant is not entitled to relief unless it is reasonably probable that it affected the outcome of the proceedings. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). As discussed, trial counsel did object to the only comment made by the prosecutor that warranted objection. Other objections would have been futile, and counsel is not ineffective for failing to make futile objections. *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007). Further, it would be unreasonable to conclude that the prosecutor's argument influenced the jury's determination that victim's extensive testimony of abuse was credible.

Next, defendant argues that the trial court erred in scoring several sentencing offense variables. We agree in part, but the errors we find would not change defendant's final guidelines range, so he is not entitled to relief. In reviewing a trial court's scoring decision under the sentencing guidelines, whether the trial court's factual findings are supported by a preponderance of the evidence is reviewed for clear error, and whether those facts properly warrant the score is reviewed de novo as a question of law. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Defendant first argues that the trial court improperly scored offense variable (OV) 3, physical injury to a victim. MCL 777.33. The trial court scored OV 3 at ten points, which is proper if "bodily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Defendant argues that the victim suffered *no* bodily injury, thus warranting a score of zero points. MCL 777.33(1)(f). We disagree.

Bodily injury is "anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). The victim said that her vagina hurt a great deal because defendant became increasingly rough and that defendant could not fit his penis inside her the first time because it hurt too much. This is ample evidence of bodily injury. There is no evidence that the victim received any medical treatment, but medical treatment may be "necessary" whether or not it is actually obtained. MCL 777.33(3). We may generally not presume that all physical injuries require medical treatment if none was sought. *People v Armstrong*, 305 Mich App 230, 245-247; 851 NW2d 856 (2014). However, in *Armstrong* the victim seemingly *could* have obtained treatment and at least actually received some kind of medical examination; it makes a certain amount of sense that a decision not to seek treatment could be indicative that none was needed. Here, the victim had absolutely no choice. Under the totality of the circumstances, we are simply not persuaded that the trial court's finding that the victim needed medical treatment was clearly erroneous.

Defendant next argues that the trial court improperly scored OV 11, criminal sexual penetration. MCL 777.41. The trial court scored 50 points, which is proper if "two or more

criminal sexual penetrations occurred." MCL 777.41(1)(a). The trial court should score "all sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(2)(a). The offenses must have a "connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006). The victim testified that defendant usually penetrated her in multiple ways, digitally and with his penis, during an interaction, and that these interactions occurred hundreds of times. Penetrations arise out of the sentencing offense when they occur at the same place, under the same circumstances, and during the same course of conduct as the sentencing offense. *Johnson*, 474 Mich at 100–102. Therefore, there was evidence to support scoring OV 11 at 50 points, and defendant's argument to the contrary is frankly outrageous.

The proper scoring of OV 12, contemporaneous felonious criminal acts, MCL 777.42, is slightly less blatantly obvious, because, as is both common and proper with offenses that occurred many times or involve young victims who would not be reasonably expected to recall specific dates, the information alleged a range of dates for defendant's conduct. See *People v Miller*, 165 Mich App 32, 46-47; 418 NW2d 668 (1987). It therefore follows that there may be no way to be certain when the jury found the *specific* acts for which defendant was ultimately convicted to have *specifically* occurred. Any conduct used to score OV 11 cannot be used to score OV 12. Unlike with OV 11, a felonious criminal act is "contemporaneous" if the act occurred within 24 hours of the sentencing offense, as opposed to merely being part of the same course of conduct, and will not result in a separate conviction. MCL 777.42(2)(a); *People v Light*, 290 Mich App 717, 722-723; 803 NW2d 720 (2010). In many cases, when a range of dates is charged but a finite number of actual instances of conduct resulted in convictions, it becomes impossible to know whether contemporaneous criminal acts occurred within 24 hours of those specific instances of conduct. In this case, however, defendant's conduct is so egregious that no such difficulty arises.

The trial court scored OV 12 at 25 points, which is proper if "three or more contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(a). The evidence clearly demonstrated that many uncharged criminal sexual acts occurred, which is itself not enough. However, significantly, the victim also clearly testified that defendant engaged in a *multitude* of criminal sexual acts, *each* of which would independently constitute uncharged acts of CSC II, with her "every single time." These acts were indisputably "contemporaneous." We find no clear error in the trial court finding that three or more such acts indeed occurred contemporaneously with the sentencing offense and would not result in separate convictions. The trial court therefore properly scored OV 12 at 25 points.

The trial court scored OV 13, continuing pattern of criminal behavior, at 50 points, which is proper if "the offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a). "[A]ll crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). As with OV 12, conduct used to score OV 11 cannot be used to score OV 13. MCL 777.43(2)(c). However, MCL 777.41(2)(b) provides that "[m]ultiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13." Here, the victim testified that there were many sexual penetrations that occurred while the victim was

under 13 years old and within five years of the sentencing offense. OV 13 was properly scored at 50 points.

Defendant also challenges the trial court's scoring of OV 19, interference with the administration of justice. MCL 777.49. The trial court scored 10 points, which is proper if defendant "otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). Interference with the administration of justice includes, *inter alia*, preventing a victim from coming forward sooner or affecting the testimony against a defendant. *McDonald*, 293 Mich App at 299-300. There was substantial evidence that defendant attempted to prevent the victim from incriminating him, including instructing the victim not to tell anyone, "or else," threatening to kill himself should the victim not recant her statements, and writing numerous letters instructing the victim's mother to use various methods to prevent the victim from testifying. The trial court properly scored OV 19 at 10 points.

We note that defendant's trial counsel did not object to any of the guidelines scores below. Because the trial court did not err in any of its scoring, trial counsel's failure to make objections could not possibly have prejudiced defendant.

Next, defendant argues that his due process rights were violated when the trial court assessed consecutive sentences for two of his CSC I convictions. Whether a trial court has properly sentenced a defendant to consecutive sentences as authorized by statute is a question of law, which we review de novo. *People v Lee*, 233 Mich App 403, 405; 592 NW2d 779 (1999). We find no error.

Sentencing in Michigan must be concurrent unless a consecutive sentence is specifically authorized by law. *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012); *People v Spann*, 250 Mich App 527, 529; 655 NW2d 251 (2002). Pursuant to MCL 750.520b(3), the trial court is discretionarily authorized to impose a sentence for CSC I consecutive "to any term of imprisonment imposed for any other criminal offense arising from the same transaction." See *Ryan*, 295 Mich App at 409. Defendant argues that he could not be sentenced consecutively for two of his CSC I convictions because there was no evidence that the two penetrations arose from the same transaction. Crimes are from the same transactions if they "grew out of a continuous time sequence." *Ryan*, 295 Mich App at 402-403, citing *People v Sturgis*, 427 Mich 392, 401; 397 NW2d 783 (1986). As discussed above, in order to arise out of the same offense, the offenses must have a "connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Johnson*, 474 Mich at 101.

Here, the victim testified that defendant usually penetrated her in multiple ways, digitally and with his penis, during an interaction, and these interactions occurred hundreds of times. Thus, we find the evidence amply shows that count I, CSC I (digital penetration, victim under 13), arose from the same transaction that produced count II, CSC I (penile penetration, victim under 13). Defendant's consecutive sentences did not violate his due process rights and the trial court did not err in sentencing defendant to consecutive prison terms.

Finally, defendant argues that his sentence violates the Sixth Amendment of the United States Constitution because the minimum sentence was determined on the basis of facts not proven to the jury beyond a reasonable doubt. Defendant relies on United States Supreme Court

precedent discussing the federal sentencing guidelines, which is inapplicable to Michigan's sentencing scheme. *People v Herron*, 303 Mich App 392, 403-404; 845 NW2d 533 (2013). Defendant's argument is therefore likewise inapplicable.

Affirmed.

/s/ Amy Ronayne Krause
/s/ William B. Murphy
/s/ Deborah A. Servitto